[Crim. No. 3817. In Bank.—April 19, 1935.]

THE PEOPLE, Respondent, v. AUGUSTIN RAMOS, Appellant.

Geo. D. Pollock, Lloyd C. White and Bertram Young for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

WASTE, C. J.—The appellant was charged with the murder of Carmen de la Pena, a seventeen year old girl, with whom

he was desperately in love. The jury found him guilty, and imposed the death penalty.

The appellant had asked the girl to marry him. She refused, and complained to her parents that he was "bothering her". Her father asked him to leave his daughter alone. The girl's parents conducted a restaurant and poolroom in Salinas patronized by young Filipinos. On the evening of the murder Ramos went to the place and spent some hours there, interesting himself in working puzzles and talking with acquaintances. Near midnight, several Filipinos, young men who were frequent visitors at the place and with whom the deceased was acquainted, went to the restaurant for a meal. While they were eating, the deceased joined them in one of the booths, and partook of some of the food. About 12:30 o'clock, all parties prepared to leave the place. Some were already on the street, when, without any conversation being overheard between the appellant and the deceased, who were still in the restaurant, the appellant shot the girl twice, killing her instantly. In a struggle for the possession of the pistol, and apparently to prevent the appellant from shooting himself in the head, the girl's father was also shot. The claim of the defense was that the appellant, as a friend, had assisted in supporting the family of the deceased; that she had agreed to marry him, but the father and mother had "double-crossed" the appellant and prevented the marriage.

There is no necessity for reciting other facts. In his statement to the jury, counsel for the defense said: "We will want you to hear these facts that go with the facts the prosecution will give, in order that you may bring in a judgment of manslaughter. We are not asking for an acquittal. We are asking for punishment, but we will ask that verdict on the facts of the case." The jury was not convinced that the defendant was guilty of only the lesser crime. There is ample evidence to support the theory of the prosecution that the appellant had premeditatedly formed an intent to kill the girl, and that this intent flared into action when the appellant saw the friendly and familiar conduct of the deceased with the young Filipinos on whom she waited and with whom she dined that night. The question of the intent to kill in this case is well within

the rule stated in *People* v. *Donnelly*, 190 Cal. 57 [210 Pac. 523].

■ Over the objection of the defense, the court permitted police officers to testify from memory as to statements alleged to have been made by the defendant in their presence, some of them shortly after the arrest, and taken down in shorthand by a stenographer, and others three days later when the defendant was being interrogated by the police officers. The witnesses did not refer to the transcript, and did not request that they be allowed to refresh their memories by reference to it, and the writing was not one made by the defendant. Its authenticity was not an issue in the matter. One being in existence, it could have been produced, had the defense demanded it, for purposes of inspection or controverting the testimony of the officers. Hence the trial court did not commit error in permitting the officers to testify without reference to or production of the transcript. Parol evidence of the statements of the defendant was, of course, admissible. (*People* v. *Luis*, 158 Cal. 185, 193 [110 Pac. 580].)

■ Another contention of the appellant is that the trial judge "displayed an impatient and hostile attitude toward the cause of the defendant" throughout the entire trial, which conveyed to the jury an impression "that the defense being interposed was weak". The remarks of the judge may be construed as evidencing a feeling on his part that the defense was "consuming an unreasonable amount of the court's time in presenting [the] defense", as is argued by counsel. We have examined each of the instances cited by appellant, and agree that the argument noted has substantial foundation. Whether or not the court was right in this particular respect, we will not attempt to say. Counsel for the defense were earnest and sincere in their efforts to protect the rights of the defendant, and in their zeal may have led the court to remark about the length of time consumed. We have read the transcript, and do not believe the court's remarks contributed to the just verdict of the jury.

■ While deliberating on the verdict, the jurors were brought into court and sought information "in regard to the penalty if a man is given life imprisonment". The court should have answered that the matter of punishment, in

the event they should find the defendant guilty, was one with which they [the jurors] had nothing to do. (*People v. Bruno*, 49 Cal. App. 372, 379 [193 Pac. 511].) However, defendant offered no objection to the question; and the court gave the information sought and, in response to a question from a juror, added information as to the "penalty or term of years that second degree murder is subject to". The action of the court was an irregularity that has been many times condemned· by this court. As said in the case cited, the question pertained to matters concerning which the jury had no business. It had already been told in the instructions that if it convicted the defendant of murder in the first degree, the law permitted it to award the penalty, which might be death or imprisonment for life in the state prison; and that should the verdict be "murder in the first degree without affixing the penalty the law [would] adjudge the penalty and the penalty is death". Information on the subject should have stopped there.

The defendant, not having made objection to the question in the court below, and not having assigned the action of the court as misconduct, cannot urge the point for the first time on appeal. Furthermore, from our examination of the record, we find nothing in the court's action that can be held to have amounted to an inducement or promise which caused the jury to arrive at the verdict. It follows, therefore, that no reversible error was committed. (See *People v. Bruno, supra.*)

The judgment, order refusing to modify the judgment and the order denying a new trial are, and each is, affirmed.

Curtis, J., Shenk, J., Thompson, J., and Seawell, J., concurred.