[Crim. No. 446.    Fourth Appellate District.—February 7, 1940.]

THE PEOPLE, Respondent, v. GEORGE H. PARCHEN, Appellant.

216

Edgar G. Langford for Appellant.

Earl Warren, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

GRIFFIN, J.—Defendant and appellant George H. Parchen was charged jointly with his brother Frank Parchen under an indictment returned by the Grand Jury in San Diego County. They were tried before a jury, found guilty and convicted of the crime of abortion under the first count of the indictment, and with the crime of murder in the second degree in the second count of the indictment. From this judgment of conviction and from the order denying a motion for a new trial the defendant George H. Parchen appeals. The evidence against the defendant Frank Parchen was most conclusive and he has taken no appeal.

The main issue presented on this appeal is whether there is sufficient evidence in the record to connect appellant George H. Parchen with the crimes charged. Appellant maintained offices in a residence building on the street floor at No. 819

B Street in the city of San Diego. He furnished all the necessary equipment and implements necessary to carry on his business and profession as a chiropractor. Several separate large signs were attached to the front of the building reading "G. H. Parchen, D. C., Chiropractor". The appellant conducted these offices for several months prior to May, 1939. "Courtesy cards" were apparently distributed to the public, reading in part: "This card entitles you or any member of your family to a free physical examination and spinal analysis if presented before —————. George H. Parchen, Chiropractor, 3870–44th street, or 819 B street."

It appears that Frank M. Parchen, the brother of appellant, lacked about six months having his license to practice chiropractic in the State of California. He was occupying the offices with appellant on May 3, 1939. On that date Martha Wilma Anderson, aged 16, who was the wife of William P. Anderson, but who was pregnant by one William B. Bouldin, accompanied by Mrs. J. R. Scott, Bouldin and C. D. Radcliff, went by automobile to the premises above described. Upon arriving, Martha W. Anderson and Mrs. Scott went into the building. Bouldin and Radcliff remained outside in the automobile. Upon entering the building, Martha asked for Frank Parchen, talked with him about an abortion, which he agreed to perform for her, and paid him $50 in bills. It was stipulated by counsel for the prosecution and the defense that George H. Parchen was not present when Martha Anderson conversed with Frank Parchen on May 3, 1939. Mrs. Scott left Martha Anderson and Frank Parchen in a small room and she waited in the reception room for about an hour. After Martha came out of the small room, Frank Parchen handed Mrs. Scott a bottle of medicine, at the same time telling her to give Martha Anderson some of the medicine every two hours and that she would suffer some pain. Frank Parchen gave Mrs. Scott one of the "courtesy cards" above described and told her to call him if Martha "got very sick", and told them that he had administered some medicine that would bring about a miscarriage. Martha Anderson spent the night of May 3d at Mrs. Scott's home. She suffered pains throughout the night and Frank Parchen came to the home to see her on the evening of May 4th. On May 5th, at about 10 o'clock A. M., Mrs. Scott took Martha to Parchen's office. Martha and Frank Parchen went down the hall and Mrs.

Scott remained in the reception room. At 2 o'clock P. M. Martha returned to the reception room, very pale, and she could hardly talk. Blood stains were in evidence on her person. Frank Parchen was called to the reception room. The three returned to a small office in the rear of the building. Martha was hemorrhaging and Frank Parchen attempted to stop the hemorrhage with packing. George H. Parchen, appellant, dressed in a business suit, at this time entered the office to which the three had retired, looked at Martha, and then said to Frank Parchen that ''he (Frank) had no . . . business taking a case like that'', and asked Frank Parchen what he had done for her. Frank Parchen and George H. Parchen cooperated in giving Martha some treatments and artificial respiration, but she died between 5 and 5:30 o'clock P. M. George H. Parchen removed the packing. Thereafter, the matter of the disposition of her body was discussed by George H. Parchen, Frank Parchen, and Mrs. Scott, Bouldin and Radcliff. Bouldin's people lived in Texas. George H. Parchen said that it would be a good idea if the body could be sent there, and that he would sign the death certificate, in order to keep down as much trouble as possible. Frank Parchen said he was willing to pay $100 toward expenses. George H. Parchen offered to see an undertaker and told Mrs. Scott that if there was any trouble, she should say that Martha Anderson had fallen off a high step and had a miscarriage; that she had gone to Frank Parchen's office two or three times for adjustments to her back and that she had started hemorrhaging at Mrs. Scott's home and had gone down to Frank Parchen's office for him to stop the hemorrhage but he was unable to do so. Mrs. Scott drove with George H. Parchen to Kent's funeral parlor at 44th and University Avenue, San Diego. On the way to the funeral parlor George H. Parchen told Mrs. Scott that ''if this got out, they would all take a rap and cause a lot of trouble, and if we wouldn't talk, they wouldn't talk, and that he would sign the death certificate and they would take care of . . . he and his brother would take care of the expenses for the casket and tickets''. Upon arrival at the undertaking parlor George H. Parchen introduced himself to Mr. Ewing, the undertaker, and talked to him about shipping Martha Anderson's body. George H. Parchen told Mr. Ewing that he had had an accident at the office and that he wanted to see about getting a

casket and arranging for the shipment of the body out of the state. The money was furnished by the Parchens and the body was shipped to Texas and buried. On May 5, 1939, George H. Parchen told the undertaker that Martha Anderson "had pneumonia and the flu, and all of a sudden her heart had just went back on her". He (Ewing) asked Parchen if the patient had died suddenly or whether he had been in attendance for any length of time, to which George H. Parchen replied that he had been attending her for five days and that he would sign the death certificate for Martha, which he did. The death certificate reflects the following information: "Full name—Martha *Bouldwin.* . . . " "The principal cause of death and related causes of importance in order of onset, were as follows: cardiac failure. Other contributory causes of importance: pneumonia, lobar—May 1st, 1939. Incidental flu May 1st, 1939. Name laboratory test confirming diagnosis—none. Signature, H. G. Parchen, D. C. Address 3870 44th street."

Bouldin testified that on the way to the undertaking parlor George H. Parchen stated, "he said it was just one in a million that happened like that. He said that he had not been doing any operating for the past six months. He said that the Navy doctors had been hot behind him and he had quit and that *Frank had been taking care of it for him".* (Italics ours.) "He further said 'if this gets out, we will go over and I will have to take the rap'."

Mr. Ewing, the undertaker, testified that he did not notice any indication of pneumonia in Martha Anderson's body. Dr. Toomey, who examined the body which had been exhumed in Texas, testified that the death of Martha Anderson was due to severance of the cervical arteries and veins resulting from the performance of an abortion upon her.

The defendant Frank Parchen took the witness stand and testified that he was not present at 819 B Street on the afternoon of May 3d and did not converse with Martha Anderson or any of the parties above mentioned, and that the first time he ever saw Martha was on May 5th, when he arrived at the premises above described and found her dead; that George H. Parchen and the above-mentioned parties were in the room where the body was lying; that he had been out collecting bills for his brother George H. Parchen; that on occasions he aided his brother in treating his patients; that he received

no money from Martha at any time and that he never treated her professionally on any occasion; that the only reason he gave money to the undertaker was to help George H. Parchen out.

The witness Bouldin testified that defendant Frank Parchen "said he shouldn't ever have taken the case, she was too far gone, and he said that he started the operation and realized he should not have started it, but said that George finished it up". This conversation was denied by Frank Parchen.

Frank Parchen departed from San Diego on May 16, 1939, with his wife and family and was apprehended in Oregon. He further testified that when he came to San Diego from Georgia in November, 1938, he was only on a visit and remained in San Diego to help his brother George H. Parchen in "doing adjustments at this office at 819 B street".

Appellant George Parchen did not take the witness stand to testify. The statements claimed to have been made by him stand uncontradicted in the record.

■ It is appellant's contention that the evidence is not sufficient to justify the conviction of appellant on the theory that he aided and abetted Frank Parchen in the commission of the offenses charged; that the evidence, taken in its most favorable light, would only establish the fact that the appellant George H. Parchen was an accessory after the fact and should have been charged as such.

After a careful review of the testimony, consisting of over 1200 pages, taken at the trial, we can say at the outset, that had the appellant been charged as an accessory after the fact, the evidence would have fully justified a conviction, but that is not the question before us. We must therefore determine whether there was sufficient evidence, direct or circumstantial, from which the jury could have properly determined that the appellant either directly committed the acts complained of or aided and abetted in their commission. (Sec. 971, Pen. Code.) We must consider the fact that the appellant had been carrying on his profession at the location above described. Apparently all of the equipment was furnished by or belonged to appellant. There was no indication from the signs on the building that any person was operating therein as a chiropractor other than appellant. He was the only per-

son held out as authorized to treat the sick and afflicted at that place of business. The offices were so arranged that passage through doors from one room to the other was possible without the knowledge of persons seated in the reception hall.

The district attorney forcefully argued that the jury would be justified in concluding from the evidence that both defendants Frank Parchen and George H. Parchen could have been present and assisted in procuring the abortion between the hours of 10 A. M. and 2 P. M. on May 5th. It was further argued that appellant having signed the death certificate, in which he stated that he had "attended deceased from May 1st, 1939, to May 5th, 1939", and having stated to the undertaker that "he had been attending her for five days", tended to indicate his prior knowledge of her condition and of the treatment given.

It was further argued that the statement accredited to appellant as having been made to the witness William Bouldin that "the Navy doctors had been hot behind him and he had quit and that *Frank had been taking care of it for him*" (italics ours), established knowledge on the part of appellant that Frank Parchen was so engaged in unlawfully performing such abortions and accordingly it could be properly said that appellant, even though not present, aided and abetted in the commission of the crime. (Sec. 971 Penal Code.)

Appellant saw fit to remain off the witness stand and allowed this testimony to go unchallenged. Under the circumstances of this case, we are impelled to the conclusion that the jury was justified in giving the fullest significance to the unchallenged admissions. The appellant's conduct and actions in endeavoring to dispose of the body tended to establish his guilty knowledge of the crimes charged. ▇ The familiar rule that all matters going to the credibility of the witnesses and to the weight of their testimony, as well as all questions of conflicting evidence, are to be left to the determination of the jury, applies. (*People* v. *Hickok*, 28 Cal. App. (2d) 574 [83 Pac. (2d) 39].)

We must therefore conclude that, although the evidence against appellant is not as conclusive as that against his co-defendant, the record is not devoid of substantial evidence, either circumstantial or direct, tending to connect appellant with the commission of the crimes charged as a principal.

■ It is true that the law makes no distinction in the degree of proof required in either direct or circumstantial evidence, but requires that regardless of whether the evidence be direct or circumstantial or a combination of both, it must be sufficient to establish the guilt of defendant beyond a reasonable doubt, but on appeal, the findings of a jury on disputable questions of fact, whether supported by direct or circumstantial evidence or both, must be given full faith and credit, and it is only where, as a matter of law, there is no legal evidence supporting the charge that a reviewing court may disturb the verdict. ■ On an appeal in a criminal case, the court must assume in favor of the verdict the existence of every fact which the jury could reasonably have deduced from the evidence, and then determine whether the guilt of the defendant is deducible therefrom; and where it is claimed that the evidence is insufficient to support the verdict and the evidence is entirely circumstantial, the question for the court to pass upon is whether there were facts before the jury to justify the inference of guilt. Tested by this rule we believe the evidence sufficient to support the verdict of the jury. (*People* v. *Leo Ekstrand, Jr.,* 28 Cal. App. (2d) 1 [81 Pac. (2d) 1045]. See, also, *People* v. *Hickok, supra; People* v. *Collins,* 4 Cal. App. (2d) 86 [40 Pac. (2d) 542] ; *People* v. *Thompson,* 16 Cal. App. 748 [117 Pac. 1033] ; *People* v. *Looney,* 9 Cal. App. (2d) 335 [49 Pac. (2d) 889] ; *People* v. *Yant,* 26 Cal. App. (2d) 725 [80 Pac. (2d) 506] ; *People* v. *Baker,* 25 Cal. App. (2d) 1 [76 Pac. (2d) 111].)

■ Appellant next complains of the refusal of the trial court to give, on the ground that they were already covered in other instructions, two of his proposed instructions. The first refused instruction deals with the recognized distinction between an accessory before the fact and an accessory after the fact, and elaborately restates the rule as he would have it apply to appellant. A similar instruction was proffered and likewise refused pertaining to the subject of the criminal liability of a principal for acts of his agent, which recites the rule to be that "before one may be convicted of a crime by reason of the acts of his agent, it must be clearly established by the evidence that he knowingly and intentionally aided, advised, or encouraged the commission of the crime committed by the agent . . . ", and in support thereof cites *People* v. *Doble,* 203 Cal. 510, 515 [265 Pac. 184] ;

*People* v. *Gassaway,* 28 Cal. 404. He contends that the court failed to instruct on this subject.

The record discloses that, prior to argument of counsel to the jury, the court gave the following instruction bearing on the questions presented.

(1) ''You are further instructed that every person who, *after a felony has been committed,* harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed said felony, or has been charged with said felony, or convicted thereof, is an accessory to said felony.'' (Italics ours.)

(2) ''You are further instructed that if you find and believe from the evidence and beyond a reasonable doubt *that the defendant George H. Parchen, was an accessory after the fact, as hereinbefore defined,* to the offense of abortion and at the same time from the evidence, you do not find the said defendant George H. Parchen guilty as a principal, as that term has hereinbefore been defined, of the offense of abortion, *then and in that event it is your duty to return a verdict of not guilty as to the defendant George H. Parchen. . . .* '' (Italics ours.)

A similar instruction was given pertaining to the offense of murder.

██ When the jury are fully and fairly instructed upon a subject it is not error for the trial court to refuse defendant's proposed instructions which are mere repetitions. The court is not required to state the law to the jury more than once, but may, as a general rule, refuse requested instructions which are fully covered by other instructions. A defendant in any given case is not entitled to have his own particular phrasing of the law adopted by the court or given to the jury. It is sufficient if the substance of the law applicable to his case is set forth by the court correctly in its instructions. (*People* v. *MacDonald,* 24 Cal. App. (2d) 702 [76 Pac. (2d) 121].) In addition to the giving of the above-mentioned instructions the district attorney in his argument emphasized the correct effect of those instructions. The jury was fully and fairly instructed that unless George H. Parchen could be convicted as a principal, he should be found not guilty. We think the instructions requested were repetitious and that their rejection by the trial court was proper

and that the appellant herein had a fair and impartial trial; that he was convicted on competent and sufficient evidence, and that the judgment appealed from should be affirmed.

The judgment and order from which this appeal has been perfected are and each of them is affirmed.

Barnard, P. J., and Marks, J., concurred.