[Crim. No. 3812.   Second Dist., Div. Two.   Oct. 5, 1944.]

THE PEOPLE, Respondent, v. ARCHIE CLEMENT SAVAGE, Appellant.

Walter L. Gordon, Jr., for Appellant.

Robert W. Kenny, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant was convicted of grand theft by a jury. From the judgment and from the order denying his motion for a new trial he brings this appeal on the grounds of (1) insufficiency of the evidence, (2) misconduct and preju-

dice of the trial judge, (3) admission of incompetent proof, and (4) refusal to give requested instructions. He sought to establish an alibi and sets forth in his brief a résumé of the testimony of a number of witnesses who supported that plea. However, the circumstances shown and the extrajudicial admissions of appellant were sufficient to warrant the verdict by which we are bound in the absence of prejudicial error.

Prior to August 11, 1943, appellant and one Ethel Waters, the prosecutrix, had been friends. They had danced together in "Cabin in the Sky" in New York in 1941. In that year they came with their troupe to Los Angeles where prosecutrix and a number of other persons occupied a house on South Hobart Boulevard. Appellant was one of that party and he slept on the third floor of the house from December, 1941, until August 2, 1943, with no tasks to do and no payments to make for his keep. He worked only intermittently.

On June 30, 1943, prosecutrix concealed in one of her wardrobe trunks $10,150 in money and jewelry worth $13,400. She locked her trunks and, with the keys in her purse, accompanied by certain members of her household left for San Francisco to fill a theatrical engagement, leaving appellant with others in her home where he remained until the day of prosecutrix' return, August 2, 1943. He then delivered to her the keys to her house and took quarters elsewhere. In her dressing room she found the card of "A. B. C. Locksmith, Keys Made for any Lock," never seen by her before. One week later she opened the trunks only to find one in disarray and her jewels and money absent from the other. She had neither invited a locksmith to her house nor authorized Savage to have any keys made or to take any of her possessions. When appellant called on August 11 at prosecutrix' telephonic request she reminded him of his bringing strangers into her house without permission during her absence and stated that unless he helped find her things she would have his friends investigated. Although she had made no mention of the items of her loss his reply was: "Don't you dare have anything done to my friends, because I have got your money and your jewelry, and there is nothing you can do about it, because it is my word against yours. . . . I'll return them only when God makes me." On the following day he told her by telephone that he would return the "balance" of her property on conditions. At her home the same day he specified his conditions, to wit: "that you sign over this house . . . and your continental car

in my name.'' During prosecutrix' absence appellant had brought his associates into her home, had there engaged in gambling and had displayed stacks of currency. He had employed Messrs. Shane and Fream, locksmiths, to come to the Hobart house on July 5, 1943, to make keys for the two trunks and Miss Waters' dressing room. For the three keys he paid $6.50 to Shane, who left the card of ''A. B. C. Locksmith.'' No part of her money or jewels was ever restored to the prosecutrix.

■ Proof of the foregoing facts established that personal property worth in excess of $24,000 was taken from the possession of its owner without her consent and with intent to deprive her thereof permanently. That this was larceny is fundamental. (*People* v. *Edwards,* 72 Cal.App. 102, 114 [236 P. 944].) That such larceny is one of the offenses constituting grand theft is statutory. (Pen. Code, § 484; *People* v. *Cook,* 10 Cal.App.2d 54 [51 P.2d 169]; *People* v. *Myers,* 206 Cal. 480, 483 [275 P. 219].) ■ In determining that the evidence is sufficient we are required to assume the truth of the facts impliedly found and all inferences fairly to be drawn from the evidence. (*People* v. *Hannon,* 44 Cal.App.2d 484 [112 P.2d 719]; *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Hennessey,* 201 Cal. 568, 571 [258 P. 49].) The circumstances shown are unimpeachable. The testimony of prosecutrix as to the admissions made by appellant was corroborated by two members of her household. ■ Neither his denials of guilt nor his proof of an alibi can avail him as against the verdict. (*People* v. *Latham,* 43 Cal.App.2d 35, 38 [110 P.2d 101]; *People* v. *Wright,* 26 Cal.App.2d 197, 205 [79 P.2d 102].) ■ The corpus delicti was established by the proof of the wrongful removal of the valuables from their locked repository by a human agency. (*People* v. *Harvey,* 25 Cal.App.2d 368, 371 [77 P.2d 487].) The connection of appellant with the crime is established by the circumstances above detailed and by his admissions to his victim. That the taking of the property was with felonious intent is shown by the means of gaining its possession in the absence of the owner, by no justification of the act, by the continued deprivation of the owner and by the declarations of the thief. (*People* v. *Payne,* 117 Cal.App. 108, 112 [3 P.2d 328].)

■ There was no misconduct of the trial judge resulting in prejudicial error. Practically all of the court's criticized comments were made out of the hearing of the jury in colloquies with counsel relative to proposed offers of proof. If in

such private discussions the judge made animadversions which indicated prejudice or bias no harm was done to appellant. It is the duty as well as the privilege of a jurist to gain and to nurture convictions upon ethical and juridic concepts. While prosecutrix was under cross-examination appellant undertook to show her intimate relationship with him. Objections to the questions were sustained as not proper cross-examination. It was during the private discussion of these offers and objections that such remarks of the court were made for the purpose of discouraging counsel from unnecessarily besmirching the character of the prosecutrix. ██ The court acts within its jurisdiction in rejecting offending questions and in directing the course of the trial. (*People* v. *Yuen,* 32 Cal.App.2d 151, 160 [89 P.2d 438]; *People* v. *Murphy,* 17 Cal.App.2d 575, 588 [62 P.2d 592].) ██ At one time during the testimony of the prosecutrix the judge apparently thought she became confused by a succession of questions, objections and motions to strike. After the prosecutor had attempted to explain the rules governing the admission of testimony, the judge decided to lend a hand by addressing the following to the witness: "Miss Waters, I will help you out on this. You answer the questions they ask you just simply, one at a time. Between the two of them they will think of everything that is necessary, and it will go faster that way." Appellant contends that the words of the court illustrate that the judge was sympathetic with the prosecutrix. To us it appears to be only an attempt by the judge courteously to direct the witness properly to answer the questions. ██ Although he does not assign it as error, he complains that he was prejudiced at another time when in response to an objection the judge said: "That is an oblique answer." Neither is any occurrence concomitant or subsequent suggested as a reason why that observation by the judge was prejudicial, nor is any rule or reason recited as inhibiting the court's commenting upon an answer which is the target of a motion. The court may without impropriety and without prejudice to a prisoner on trial give his reasons for a ruling. (*People* v. *Mayes,* 113 Cal. 618, 622 [45 P. 860].)

██ Appellant says that "so enraged was the judge at the defendant who was at liberty on bond that he ordered defendant committed to jail during the remainder of the trial without any apparent reason therefor," and that such action indicated hostility toward appellant. We discern no animosity

toward the accused in the court's proposal. Any person on trial may be committed. (Pen. Code, § 1129; *People* v. *Nickell*, 22 Cal.App.2d 117, 123 [70 P.2d 659]; *People* v. *Williams*, 30 Cal.App.2d 234, 240 [85 P.2d 974].) It is true that out of the jury's presence the court stated to counsel that he would commit the defendant but wished that it could be done in such a way that the jury would gain no knowledge of the incarceration. That the court made such suggestion yet entered no order is not proof that the judge was inimical to appellant. Neither could such a statement made privately to counsel cause prejudice. (*People* v. *Kynette*, 15 Cal.2d 731, 759 [104 P.2d 794]; *People* v. *Johnson*, 11 Cal.App.2d 22, 24 [52 P.2d 964]; *People* v. *Ramos*, 3 Cal.2d 269, 273 [44 P.2d 301].)

In no instance pointed out by appellant where the court's language is quoted by appellant is prejudice shown to have been suffered. Neither was any statement of the court derogatory of appellant nor did any one of them disclose the judge's personal opinion as to the truth of any testimony or as to the guilt of the prisoner. On the contrary, an instruction positively declared that no opinion had been intended and that the jury were the sole and exclusive judges of the evidence and of the credibility of the witnesses. Had any of such statements been harmful to the defense no advantage could be taken of it on appeal in the absence of an assignment of misconduct and a request to admonish the jury to disregard the remark. (*People* v. *Boggs*, 12 Cal.2d 27, 40 [82 P.2d 368]; *People* v. *Wooley*, 15 Cal.App.2d 669, 673 [59 P.2d 1065].) In the absence of a showing that a remark of the court prejudiced the defendant the assignment is meaningless. (*People* v. *Boljat*, 36 Cal.App.2d 644, 648 [98 P.2d 513].)

At one stage in the proceeding appellant's counsel moved to strike an answer given by the prosecutrix, whereupon Miss Waters replied, ''I suggest you do. You are not trying this case on charity. He is paying my money to try it, and I am not going to let you insult me.'' The Court: ''I would admonish the witness, but I think the witness ought to be able to protect herself.'' The ruling was not correct. When Miss Waters interrupted the proceeding with her lecture to appellant's counsel it was the duty of the court to strike her language from the record, to admonish the jury to disregard it, and to instruct the witness to answer the questions propounded. But it does not appear that court's neglect so to rule materially prejudiced appellant before the jury.

The refusal to admonish the witness was rather a rebuke to the counsel personally than to the appellant himself. In the absence of a showing that reproof of counsel was prejudicial to the prisoner at the bar it is deemed to have been harmless. (*People* v. *North*, 81 Cal.App. 113, 121 [252 P. 1063] ; *People* v. *Grider*, 13 Cal.App. 703 [110 P. 586] ; Const., art. V, § 4½.)

So, also, where the accused at the trial neglects to assign the response of a witness or the language of the court as misconduct and to request the court to admonish the jury to disregard the objectionable remarks, an appellate court will not pass upon the assignment made for the first time on appeal. (*People* v. *Boljat, supra; People* v. *Wooley, supra; People* v. *Roebling*, 14 Cal.App.2d 586, 588 [58 P.2d 929] ; *People* v. *Myers*, 1 Cal.App.2d 620, 625 [37 P.2d 191] ; *People* v. *MacDonald*, 167 Cal. 545 [140 P. 256] ; *People* v. *Todd*, 9 Cal.App. 2d 237, 245 [49 P.2d 611] ; *People* v. *Von Badenthal*, 8 Cal. App.2d 404, 411 [48 P.2d 82] ; 24 C. J. S. p. 268.)

The third assignment is that the court over objection admitted the testimony of the two locksmiths that they had identified appellant at a police show-up. After those witnesses had identified Savage as the man for whom they had made the keys at Miss Waters' residence they testified that they next saw him in the shadow-box of the sheriff's office. It is not contended that either locksmith at the sheriff's office pointed out to the officers the prisoner as the purchaser of the keys. The testimony which appellant says was prejudicial was that in which the locksmiths testified that they had seen him at the show-up. This is a far cry from testimony that they had pointed appellant out to the sheriff at the show-up as the man to whom they had delivered the keys on July 5, 1943. It would have been prejudicial to allow the locksmiths to testify that at the show-up they identified appellant to the officer as the purchaser of the keys and thereby corroborate their testimony. But after a culprit has been identified in the courtroom it is competent proof for the witness to relate that on prior occasions, either before or after the crime, he had seen the prisoner and knew him to be the same person who had committed the offense. (*State* v. *Buschman*, 325 Mo. 553 [29 S.W.2d 688, 70 A.L.R. 904] ; *State* v. *Egbert*, 125 Iowa 443 [101 N.W. 191] ; *Martin* v. *State*, 100 Fla. 16 [129 So. 112, 115] ; *Yarbrough* v. *State*, 105 Ala. 43 [16 So. 758, 788].) The authorities cited by appellant on this point (*People . Cotton*, 117 Cal. App. 469 [4 P.2d 247] ; *Murphy* v. *State*, 41 Tex.Crim.Rep.

246

120 [51 S.W. 940]; *People* v. *Jung Hing,* 212 N.Y. 393 [106 N.E. 105, Ann.Cas. 1915D 333]; *Warren* v. *State,* 103 Ark. 165 [146 S.W. 477, Ann.Cas. 1914B 698]; *People* v. *Feary,* 85 Cal.App. 433 [259 P. 491]) are readily distinguishable. The vice of the trial court's ruling in each of these cases except one lies in the fact that the identifying witness was allowed to tell that on a previous occasion after the crime he had said to others that the party then before him was the perpetrator of the crime. In the Cotton case the witnesses were erroneously permitted to tell of the means whereby they had made the identification. However, the Cotton judgment was affirmed for the reason that upon a review of the whole record it appeared that the error was not prejudicial. (See *People* v. *Dyer,* 30 Cal.App.2d 590, 593 [86 P.2d 852].)

It is contended that appellant was prejudiced by the court's refusal to give the following instruction: "You are instructed that in order to convict the defendant upon evidence and circumstances it is necessary that not only all the evidence concur to show that he committed the offense or offenses with which he is charged, but that the circumstances are inconsistent with any other rational conclusion, and it is not sufficient that the circumstances proved coincide with, account for or render probable the proposition sufficient to be established by the prosecution, to wit, 'that the defendant is guilty,' but the circumstances themselves must exclude to a moral certainty every other proposition but the single one of guilt, or you, the jury, I charge you, must find the defendant not guilty of the offense or offenses charged in the information." This instruction is not an accurate statement of the law and therefore no part of it should have been given. (*People* v. *Housman,* 44 Cal.App.2d 619, 628 [112 P.2d 944]; *People* v. *Megladdery,* 40 Cal.App.2d 643, 653 [105 P.2d 385]; *People* v. *Rosa,* 10 Cal.App.2d 668, 673 [52 P.2d 542].) It is the function of the jury to decide the guilt or innocence of a prisoner upon the evidence whether circumstantial or direct. (*People* v. *Conkling,* 111 Cal. 616, 628 [44 P. 314]; 8 Cal.Jur. 388.) The language of the rejected instruction implies that "evidence and circumstances" are two separate things. If it was intended by that phrase to refer to direct evidence and circumstantial evidence, it failed of its purpose. As requested it is confusing. It would direct the jury that they must find that not only must *all* the evidence concur to prove that the accused committed the offense, but that the

circumstances must be inconsistent with any other rational conclusion. Such is erroneous. The accused may offer any evidence contradictory of direct testimony and other proof of his innocence. ■ The jury may properly choose to find in conformance with the evidence of the People and reject all of that admitted on behalf of defendant. (*People* v. *Hightower,* 40 Cal.App.2d 102, 107 [104 P.2d 378] ; *People* v. *Young,* 25 Cal.App.2d 148, 153 [77 P.2d 271] ; *People* v. *Shellenberger,* 25 Cal.App.2d 402, 406 [77 P.2d 506].) ■ An instruction that attempts to deprive the jury of determining the credibility of the witnesses and the weight to be given to their testimony is erroneous.

In support of his claim that the refusal of the instruction was error appellant cites the case of *People* v. *McClain,* 115 Cal.App. 505, 510 [1 P.2d 1085].) But in that case the *entire proof* was circumstantial. The rejected instruction there was sound and proper. It related to nothing but circumstantial evidence. ■ Where the proof is not entirely circumstantial it is not error to refuse an instruction requiring the jury to adopt that interpretation which would admit of defendant's innocence and to reject that which would point to the guilt of the accused. (*People* v. *De Voe,* 123 Cal.App. 233, 238 [11 P.2d 26].) The court's stock instructions abundantly covered the question of circumstantial and direct evidence. None other was necessary to the protection of appellant's rights. (*People* v. *Parchen,* 37 Cal.App.2d 215, 223 [98 P.2d 1045].)

The judgment and the order denying a new trial are affirmed.

McComb, J., concurred.

WOOD (W. J.), J.—I dissent. In my opinion the court committed prejudicial error in rejecting evidence which defendant offered. Defendant should have been permitted on cross-examination of the prosecutrix to show the relation which existed between them.

The evidence against defendant was circumstantial and the court should have given to the jury an instruction embodying the rules applicable to circumstantial evidence as set forth in the instruction offered by defendant, which is copied in the majority opinion. (*People* v. *Rayol,* 65 Cal.App.2d 462 [150 P.2d 812] ; *People* v. *Hatchett,* 63 Cal.App.2d 144 [146 P.2d 469].) No instruction was given to the jury cover-

ing these rules. It is true that the proffered instruction, apparently through inadvertence, used the expression "evidence and circumstances" instead of evidence *of* circumstances. The use of the word *and* would not in my opinion be confusing to the jury. But if the court felt that the instruction would be confusing to the jury a slight modification should have been made.

Counsel for defendant complains that she was "intimidated, coerced and threatened by the trial court." She refers to proceedings which took place at the bench out of the hearing of the jury, when she attempted to offer in evidence a letter written by the prosecutrix to defendant in which she referred to him as "Darling Hard-working Hubbykins":

"THE COURT: So it may be clear, many of these matters I will consider as the trial develops, but I resent very strongly, and I am sure the people of the State of California generally do, that when a prominent person is the complaining witness, the defense frequently tries to blackmail. I think the issue in this case is, Did the defendant enter the trunks and take the property he is alleged to have taken?

"I will carefully consider, as a matter of law, each collateral matter that may throw some light, circumstantial evidence or otherwise, on that question, but I ask counsel not to be a party—— her standing at the Bar is such that I am sure she will not be—— not to be a party to permitting her client's feelings to put her in position that people could say she was using the forum of the court as a means of retaliation at the complaining witness, with the idea a complaining witness in the future will think twice before they ask the court for their legal rights. I want to try the issues of facts fairly to the defendant, and I will rule on each matter, but I want you not to bring in any matters that are not material to the issue, and if you do so, I will handle the case in such a way that you may be sorry you did it.

"MRS. ROOT: I might state counsel is perfectly willing to stand back of every question that she asks; and further I might call your Honor's attention to the fact this defendant is practically just as prominent as Ethel Waters ever thought of being. He is a noted dancer; he is now at least with the spotlight of 'Sweet and Hot,' and at no time has he attempted to do anything but protect his rights under the law.

"THE COURT: At this time I am going to exercise my right,

in view of the *court* in which the trial is proceeding, and I am ordering the defendant committed for the duration of the trial. That, of course, can be done in the presence of the jury, under the authority of *People* v. *Williams,* but I prefer that it be done in such a way the jury do not know that he is incarcerated. You will inform the bailiff to hold him.''

The record discloses that the following proceedings took place at a later time in the presence of the jury: ''Q. (By Mrs. Root): Miss Waters, is it not true at that conversation that he asked you why it was you had told your sister, that he, Archie Savage, would have to make the break, but that you were forcing him to do so? A. I didn't make any conversation like that.

''Q. And that further than that, that he wanted to know why it was, that after three years of your association, wherein you knew that he idolized you, that you had dumped him for Tommy Brookins?

''MR. DIVECCHIO: Your Honor, we are going to object.

''THE WITNESS: May I answer the question? She is trying to insinuate something——

''MR. DIVECCHIO: It is not proper cross-examination, and an attempt to cast aspersions in this case that have no bearing on the issues of the case.

''THE COURT: I am going to make the ruling now before the jury.

''MR. DIVECCHIO: I think this witness needs that protection. This woman is a notable woman. She should not be made to pay the price of counsel and the defendant's desire to ruin her.

''MRS. ROOT: As a matter of record, I resent the statement of counsel as to defendant's counsel.

''THE COURT: I admonished you out of the hearing of the jury. Now, I am admonishing you in the hearing of the jury. I will stand on the record. This is not burglary; this is not embezzlement. It is alleged theft. It wouldn't matter if this defendant were her natural son. It wouldn't matter if he was her husband, her lover, or anything. The issues in this case are, 'Did he go to the trunk and take the money?' If he did, it would be theft, whatever the relationship was. In this case I don't think the personal life of the complaining witness should be brought into the matter. I don't think her

private correspondence should be offered to the court. I don't think insinuations about her relations—it doesn't matter what her relations were with the defendant, and I now instruct the jury that evidently they were very congenial and very friendly over a period of years, but I instruct the jury that is immaterial, and I admonish you not to bring any more of Miss Waters' personal matters into this case.

"MRS. ROOT: If your Honor please, so the record discloses the situation, and so that counsel may understand, and so that the jury may understand, the theory of the defendant's case is that the motive back of the entire situation is that it was not Archie Savage that took the money or the property, but it was a third person who took it.

"THE COURT: You can develop that by competent evidence. You can develop it by argument, but I hold that it is immaterial to go into her private correspondence and to try to go into her personal matters. In other words, because a person makes a complaint of a theft, their private life is not open to the whole world, and in this community especially there are plenty of examples where prominent people do not even complain when they are robbed. I am not prejudging this case. The defendant is presumed to be innocent and he should be tried on the merits of the case. Did he go to the trunk without authority, open it, and take therefrom property of the complaining witness? And I am going to so handle this case, and I am sure that the Supreme Court will back me up on it, because the issues do not require that we go into the personal affairs of this complaining witness.

"MRS. ROOT: In other words, am I to understand that the conversation—because we will have to meet it when the defendant takes the witness-stand as well as now, and also for foundation purposes, that the conversation that the defendant claims that he had with Miss Waters is not, as far as his theory is concerned, to be introduced, because it might or might not bring in the fact that they were very happily situated professionally and otherwise, until a third person came in, because the crux of our case arises over the conversation.

"THE COURT: That is not my ruling.

"MRS. ROOT: That is my only interest in the matter at the time of the conversation, as to whether or not he made such a statement to her.

"THE COURT: That is not my ruling. The conversation

having been brought in in the beginning, can be gone into fully, but I suggest that you, as an officer of this court, do not take the privilege of suggesting things to this witness. When the defendant gets ready, he can get on the stand and tell any story he wants at his own peril. That is his privilege when he gets on the stand—anything that is material. I think you have no right at this time—it is a courtesy of cross-examination—it is only within the discretion of the court anyway, to suggest things to this witness, which are not in the record. You may, of course, ask her just what happened and go fully into what she says happened, but at this time I don't think you should make suggestions to her which I feel are a reflection on her personal life.

"MRS. ROOT: In other words then, I may not lay a foundation as to what he said by calling it to her attention and asking her if he made such a statement? Is that the court's ruling?

"THE COURT: I see you are going to take advantage of the law, and as any prominent person comes into court, they do so by taking the risk of being slandered and having their personal affairs misrepresented. Very well. You know the law and you have that right. You go just as far as you want. I am not holding you out on anything, but I think I have the right to admonish you before the jury. I tried to admonish you privately, and now I admonish you before the jury, and I stand by the record."

The record further discloses: "Q. (By Mrs. Root) And the first that you made a report, after that alleged conversation, was when in point of days? A. I called Archie Savage at his studio on Monday morning and gave him an ultimatum, was he going to let me put it in man's hands or was he going to return my things—whatever he decided—was my conversation. I said, 'God will not let you go through with this,' and I *think* God I can talk about it. I prayed with him not to make me make an open issue of this, not because I have anything to hide, because I haven't. I am still a respectable woman, and you are known to hit under the belt, but you can't do me any harm, and my relation with Archie Savage was clean, normal, and above board. That I am not ashamed of, and it wasn't Tommy Brookins that caused our separation from that standpoint. It was because I refused to allow Archie Savage to desecrate and dissipate my privacy and my

home, and that a doctor or psychiatrist can settle where Archie Savage is concerned. . . . Q. You have never seen any of the jewelry in his possession that you claim that you lost? A. Would I likely see it? Q. Have you seen it? A. Have I? You ought to know. You are his lawyer. He tells you the truth. Q. Have you ever seen it? A. He has admitted the truth to you. How could I see it? Mrs. Root: We will move to strike the answer. The Witness: I suggest that you do. You are not trying this case on charity. He is paying you my money to try it, and I am not going to let you insult me.''

Although some of the criticized remarks were not made by the court in the presence of the jury, it is apparent that the court erred to the prejudice of defendant in several remarks which were made in the presence of the jury. Counsel for defendant had the absolute right to cross-examine the prosecutrix in the manner disclosed by the record, a right which was not to be accorded as a courtesy on the part of the court. Defendant had the right to take the witness stand and give his testimony without the advance statement from the court that he would be doing so ''at his peril.'' There was no occasion for the district attorney to refer to the prosecutrix as a ''notable woman'' nor for the court to speak of her as a ''prominent'' person. The court erred in instructing the jury that the relations of the prosecutrix and defendant were ''very congenial, very friendly.'' Especially damaging to defendant was the court's statement in the presence of the jury that ''in this community especially there are plenty of examples where prominent people do not even complain when they are robbed.'' Defendant was injured by the statement of the court to his counsel that she was ''going to take advantage of the law,'' and that if ''any prominent person comes into court, they do so by taking the risk of being slandered by having their personal affairs misrepresented.'' The references to the fact that so-called prominent persons in this community may have been slandered on other occasions had no place in the trial. The rules of law should have been applied to the prosecutrix and to the defendant without reference to the experiences of other ''prominent'' people and without regard to the standing, or lack of standing, financially, socially or otherwise of the participants in the trial.

Although counsel for defendant conducted herself with commendable zeal throughout the trial and at all times with

courtesy towards all of the participants in the trial, the court, without rebuking them, permitted the deputy district attorney and the prosecutrix to charge in open court that defendant's counsel was being paid with the money of the prosecutrix and permitted the prosecutrix to state to counsel for defendant that she was ''known to hit under the belt.'' The rule that an attorney should not be permitted to browbeat a witness should work both ways and should be enforced to protect counsel from improper aspersions by a witness.

The evidence against defendant does not point overwhelmingly to his guilt. The prosecution relied in the main upon the testimony of the prosecutrix and that of two locksmiths who stated that they made keys to the trunks and that defendant was present at the apartment of the prosecutrix when the keys were made. The defense on the other hand relied upon the testimony of defendant and that of several witnesses who, in support of his alibi, stated that defendant was far away at the studio at the time he was placed by the locksmiths at the apartment of the prosecutrix.

In my opinion defendant has not been accorded a fair trial and the judgment should be reversed.

A petition for a rehearing was denied October 19, 1944. Wood (W. J.), J., voted for a rehearing. Appellant's petition for a hearing by the Supreme Court was denied November 2, 1944. Carter, J., and Schauer, J., voted for a hearing.