[Crim. No. 4152. Second Dist., Div. Three. Dec. 3, 1947.]

THE PEOPLE, Respondent, v. JOHN CHARLES THOMAS, Appellant.

Ernest Best for Appellant.

Fred N. Howser, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WOOD, J.—Defendant was charged with the crime of grand theft, and it was alleged that he had been convicted previously of burglary. Trial by jury was waived, and the People's case, pursuant to stipulation, was submitted on the transcript of the testimony taken at the preliminary hearing. Defendant admitted the prior conviction. The court found defendant guilty as charged, and he appeals from the judgment on the ground that the evidence was insufficient to support it.

Defendant was employed as a truck driver by the Pacific Transportation & Warehouse Company, Inc., located at 825 East 62d Street, Los Angeles, which was in the business of delivering shipments of goods. That company sometimes loaded its trucks at night with the goods which were to be delivered the next day. The trucks were then left at the above address during the night, and when the drivers reported for work the next morning each one was given delivery slips, or bills of lading, listing the articles on his particular truck, and showing to whom delivery was to be made. The delivery slips were issued in duplicate, and the truck driver, upon delivering the goods, secured the signature of the consignee on the original slip, left the duplicate with the consignee and returned the original to his employer.

On the night of December 27, 1946, six deliveries of goods were placed on the truck which was to be driven by the defendant on the next day, Saturday—when defendant was to work only one-half day. The goods on his truck included four bales of khaki-colored cotton duck of the approximate value of $1,400, which were to be delivered to Downie Brothers at 640 South San Pedro Street. Defendant reported for work about 8 o'clock the next morning, December 28th, and left the premises of his employer with the truck about 9 a. m. The truck carried license numbers C.R.C. 17095 and I.C.C. 74-740. He returned to his employer's place of business about 3:30 p. m., at which time some goods were still on the truck. He gave the employer the original delivery slips, bearing the signatures of the consignees, for goods which had been delivered, and he gave the employer the original and duplicate delivery slips for some of the goods which had not been delivered. He did not, however, return delivery slips for the cotton duck. Downie Brothers did not receive the duck and it was not part of the goods returned on the truck. Defendant did not work for this employer again, but he

returned on January 10, 1947, and while he was waiting for his check for services rendered on December 28th, a company manager called the police and defendant was arrested on the employer's premises.

A witness, called on behalf of the People, testified that he is employed by the Pacific Transportation & Warehouse Company as the manager or "overseer" of the trucks; that he was present when defendant's truck was loaded on the night of December 27th; that a "medium" load was put on the truck and, in addition to the duck, it was loaded with numerous bales of cotton piece goods, thread and other items; that he saw the bales of khaki duck goods on the truck; that he was not there when the defendant took the truck out the next morning, but he was there when the defendant returned; that the goods on the returned truck were then checked, but the bales of duck were missing; that on the morning of December 28th, defendant was given delivery slips for the goods on his truck; that two of those slips were for the cotton duck—one slip for three bales and the other for one bale—and they showed that it was to be delivered to Downie Brothers, at 640 South San Pedro Street; that when the defendant returned to the warehouse with the truck he (the witness) checked the delivery receipts which defendant turned in, but those for Downie Brothers were missing; that the next time he saw defendant was in January, 1947, when defendant came in and asked if he could go to work, at which time the witness called the police. He also testified that the truck defendant drove was an open "Autocar" truck with the name "Pacific Transportation Company" over the cab and the name "Pacific Transportation & Warehouse" on the side of the truck.

Robert C. Downie, called on behalf of the People, testified that as a member of the firm of Downie Brothers, Inc., he had ordered cotton duck from a company in Alabama which was to be delivered December 28, 1946; that that particular order consisted of three bales of double filled khaki duck and one bale of single "fill" khaki duck; that each bale was approximately 40 inches high, 30 inches long and 18 inches wide; that the three bales were invoiced at $1,426.50; that he had certified copies of the invoices, and that he never received any of the duck.

Another witness, called on behalf of the People, testified that he does business under the name of L. A. Tarp Company,

which business is located at 715 South Central Avenue; that about 12:10 p. m., on December 28, 1946, two men came into his place of business and he talked with one of them whose name was Porter; that he does not recognize defendant; that Porter offered to sell one bale of khaki cotton goods and five cases of thread to the witness for $50, and showed him the "bill of lading" in the name of Downie Brothers, Inc., that there was another delivery slip made out to Downie Brothers, but he did not know how many bales were listed on that slip; that the witness refused to buy the merchandise, and after Porter left, the witness went to the truck which was parked 25 or 30 feet beyond his front door; that he was quite positive it was an "Autocar" and that it had the name "Pacific Transportation Company" on it; that the license numbers on the truck were C.R.C. 17095 and I.C.C. 74-740; that there were several bales of merchandise on the truck; that the tops were torn off two bales of cotton duck, and one of the bales was "a khaki" material and the other was an awning material; that while he was at the truck he did not see Porter or anyone; that he did not look in the seat; and he did not see the truck drive away, but he knew that the truck was there "until almost 1:00" p. m.

Another witness, called on behalf of the People, testified that he is associated with the preceding witness in business under the name L. A. Tarp Company; that on December 28, 1946, two men came into their place of business and asked if he would be interested in buying some undelivered freight which was in their (the witness's) "line"; that he told them, "no"; that one of those men was Ray or Roy Porter and the other was a stranger to him; that the stranger resembled the defendant in a general way; that they told him the merchandise consisted of thread and canvas; that they showed him some "bills of lading" and the items were "billed" to Downie Brothers; that he asked them why they didn't deliver it to Downie Brothers, and Porter said, "Do you think we want to do all of that work for nothing?"; that during the time the witness was out for lunch he went to the truck and looked at it; that it was an old model "Autocar"; that it had the name "Pacific Transportation Warehouse Company" on it, which name was on a metal plate; that there were several packages, bales and cartons in the truck; and that he could

not see what was in the bales from where he was standing on the sidewalk.

A police officer, called on behalf of the People, testified that he was one of the investigating officers; that he had two conversations with the defendant, one on January 10th, and the other on January 11th; that in the first conversation the defendant stated that he left the Pacific Transportation Company about 9 o'clock on the morning of December 28th; that he had a delivery to make to Downie Brothers; that he made two or three stops; that between Eighth and Ninth on Central Avenue he met a man, with whom he had previously worked, by the name of Ray Porter; that Porter had the "shakes and needed a drink," and asked defendant if he would buy him a drink; that he (the defendant) bought a "bottle" and they drank from it; that Porter suggested selling some of the "khaki stuff" which was on the truck; that the defendant refused to sell it, and they had some more drinks, and then drove to Seventh Street and Central Avenue where he parked the truck; that Porter got out of the truck and defendant waited for him to return, but he didn't come back; and that defendant "dozed off" for a few minutes, and then drove away. He also testified that in the second conversation defendant's statements were in substance the same as in the first conversation except that he stated he did not know what became of the cotton duck or the delivery receipts covering same.

Defendant testified that when he arrived at the warehouse on the morning of the 28th the truck was already loaded; that he did not check the contents of his truck; that he did not know what material he had on his truck and he did not know whether the cotton duck was on it; that previously he had taken merchandise out for which he had no delivery slips, and at times he telephoned to his employer to find out what to do with it, and at other times he returned it to the employer; that he has had delivery slips for goods when the goods were not on the truck; that he did not know whether he had delivery slips for the duck; that he did not look through the delivery slips because they were put in rotation by the dispatcher. After he had testified that he "naturally" looked at the delivery slips, the deputy district attorney said, "Well, the question is: Didn't you have a bill that day to deliver four bales of canvas to Downie Brothers at 640 South San Pedro?" To which

defendant replied, "There is 365 days within a year and every day I go different places I get bills." He testified further than on December 28th he made several calls, and one delivery was refused because the customer was taking inventory; that he stopped at Seventh Street and Central Avenue "to get a beer" and met Porter whom he knew casually; that Porter asked him if he (defendant) "had enough for a bottle" and he said that he did and "we went over and got a bottle"; that he and Porter went into an alley and drank there; that they then went back to the truck; that he did not remember how long he slept—the only thing he remembered was "after 10 o'clock some place, along 11:00"; that he remained there "a couple of hours" and when he thought he was able to drive he drove the truck back to the "shop," getting there at 2:30 or 3 o'clock, "something like that," and told his employer to deduct two hours' pay from his salary; that he again reported for work the following Monday but he had chills and a backache; that he told the "dispatcher" that he didn't think he could work that day, and the dispatcher said it was all right for him to leave; that the dispatcher didn't say anything to him about any merchandise missing from the truck; that he (the defendant) was in bed about five days; that on January 10th he went back to his employer to get his salary for December 28th, and was arrested; that he had not seen Porter since December 28th; that he heard he had a "line drive," but he did not know where.

Appellant urges, in support of his contention that the evidence is insufficient to support the judgment, that it is not shown in the transcript that he committed the theft, and asserts, in effect, that at most he is guilty of negligence in becoming intoxicated and thereby permitting his companion to "apparently" take the goods from the truck. ▉ In determining whether the evidence is legally sufficient to support the judgment, this court is required to assume the truth of the facts found and all inferences fairly to be drawn from the evidence. (*People* v. *Savage*, 66 Cal.App. 2d 237, 242 [152 P.2d 240].) ▉ There was evidence that the four bales of duck were placed on the truck which appellant drove on December 28th; that two of the bales, with their top coverings torn off, were on the truck when it was parked near the front of the Tarp Company; that none of the duck was on the truck when appellant returned the

truck to his employer's warehouse; that none of it was delivered to Downie Brothers; that the delivery slips for same, which had been in the possession of appellant, were not among those returned by appellant to his employer; that Porter had suggested to appellant that they take some of the duck; that no one else was with appellant and Porter while they were together; that Porter was accompanied by a man, who resembled the appellant, when he entered the office of the Tarp Company and offered to sell some of the duck and showed the delivery slips for it which were made in the name of Downie Brothers; and that the truck was driven away from where it was parked, before 1 p. m., but appellant did not return to his place of employment until 3:30 p. m.

Appellant's testimony regarding the time when he went to sleep, how long he slept, and when he awoke, was vague. He testified that the only thing he remembered was "after 10 o'clock some place, along 11:00," and that he slept for two hours. The police officer testified that appellant told him he dozed off a few minutes while waiting for Porter who did not return to the truck. In view of the fact that the truck was an open one (stake body), parked on a public street, and the fact that Porter suggested that they take the duck, the court may well have concluded that if appellant had fallen asleep, as he testified he had, and then had awakened and found that Porter had not returned, he would have checked the goods on his truck and checked the delivery slips to ascertain whether anything was missing. Since the truck carried a "medium" load when it was driven from the warehouse, and appellant had delivered some of the merchandise, and each of the four bales of duck was about 40 inches in length, 30 inches in width and 18 inches in depth, it would seem that even a cursory examination of his load would have revealed that a substantial part of it was missing. Furthermore, considering that the bales were large and bulky, it would not seem reasonable that they could have been removed from the truck without awakening a person who was dozing or sleeping on the seat of the truck. Appellant's testimony as to whether he had delivery slips for the duck was evasive. When he was asked if he had a bill to deliver four bales to Downie Brothers, he said that there were 365 days in the year and every day he went to different places. Before 1 p. m. he drove the

truck away from where it had been parked (Seventh and Central) and did not arrive at his place of employment (on East 62d Street)—a distance of approximately 56 blocks—until 3:30 p. m., and he gave no explanation as to his whereabouts during that interval. Although appellant testified otherwise, there was evidence that after he returned the truck on December 28th he did not return to his place of employment again or communicate with his employer until January 10, 1947.

The evidence is sufficient to show that the bales of duck which were to be delivered to Downie Brothers were stolen. Whether appellant participated in the theft was a question for the trial court to determine. It disbelieved appellant's testimony. It is not the province of a court of appeal to determine the weight of the evidence. The evidence was legally sufficient to support the judgment.

The judgment is affirmed.

Shinn, Acting P. J., and Vallée, J. pro tem., concurred.