[Crim. No. 2150.   Third Dist.   Mar. 27, 1950.]

THE PEOPLE, Respondent, v. CLARENCE DUARTE et al.,
Appellants.

662

George I. Lewis for Appellants.

Fred N. Howser, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

ADAMS, P. J.—Clarence Duarte and Evelyn Baxman, together with John Duarte, brother of Clarence, David Amina and Robert Walton, were charged with four counts of armed robbery and two counts of burglary. Amina and Walton entered pleas of guilty. John Duarte pleaded guilty to one count and then testified for the prosecution. Clarence and Evelyn were convicted on count three, robbery of the first degree, and count five, burglary of the second degree. Motions for a new trial were denied and the convicted defendants have appealed, urging, as grounds for reversal, that their convictions were based upon the testimony of John Duarte, an accomplice whose testimony was not sufficiently corroborated, and that there was reversible error in the giving and the refusing of certain instructions.

The victim of the armed robbery was one Jerry Comstock, who operated a grocery store at 40th Street and 12th Avenue, in Sacramento, from whom, under threat of arms, was taken cash amounting to some $600, and his watch and wallet.

The burglary involved a building occupied by one George La Brasca as a service station in Sacramento, from which the defendants took a pistol needed for proposed operations of the gang.

John Duarte, testifying as to the burglary, stated that on the evening of September 26, 1948, he and Clarence, together with Baxman and Amina, were riding in Clarence's car; that they needed a gun for future operations and Clarence said he knew that La Brasca kept one in his service station. Clarence parked the car in front of the station, told Amina where the gun was kept, then drove away, leaving John and Amina to secure the weapon. Amina broke a window, reached through and secured the revolver, and the two then returned to the car, which was parked a block away. The gun was handed to Clarence. When he attempted to start his car he

was unsuccessful, so telephoned for a "wrecker." John's testimony in this connection was corroborated by Clarence who admitted telephoning for a towcar, and by Elmer Sims who testified that he responded to such a call, and upon arrival found Clarence, Baxman and John Duarte; that he had seen Clarence on previous occasions and recognized him; that he towed the car, described as a 1937 or 1938 Oldsmobile sedan, to a garage. He also testified that a few days later he saw Clarence, Baxman and John at that garage, at which time Clarence sought to borrow some money from him. Mrs. Griffay, wife of the garage operator, testified that she saw Clarence's car at the garage on the date that it was towed in, and recognized it, as they had previously repaired it.

La Brasca testified that when he opened his station on the 27th he found glass on the floor, and that his revolver, which had been kept on a shelf in plain sight, was missing; also that Clarence had been in the station many times, and he had seen Baxman there. He identified the gun shown to him as the one stolen from his station. Police Officer Faria, of Oakland, testified that that gun had been found on defendant Amina when he was arrested in Oakland in October of 1948.

Regarding the robbery of Comstock, John Duarte testified that on the evening of September 28, 1948, he and his codefendants were riding in Clarence's car; that Clarence asked if they wanted to "pull another job," and when they assented he said that Evelyn knew Comstock's place, so they drove there. Clarence and Evelyn entered and bought a few things, then told John and Amina to go in. This they did and held up Comstock. When they left they threw away the telephone which they had torn out, and ran across an adjoining lot. Thereafter Clarence and Evelyn picked them up. Comstock testified that two men entered the store, bought milk and ice cream, and when he turned to ring up the money one of them stepped around with a pistol in his hand, ordered him to leave the drawer open and get the money out; that the money was put in a bag and he was then taken to a rear room and bound, and his watch and wallet taken. The men then ripped out the telephone and warned Comstock not to sound an alarm for five minutes. At the trial he identified Amina as the man with the gun, and John as his companion; he also identified his watch.

Arden Lane and his wife both testified that a car was parked near their residence near the Comstock store on the evening

of the robbery; that it had been around two or three times, and, being curious because it seemed to have no muffler, Lane walked out to take a look; that after a few minutes two men ran across a lot next to the store. One came to the car, then walked toward 14th Avenue; that the car then headed toward 12th Avenue, without lights.

Some two weeks later Clarence sought to borrow $17 from George Bulgar, the owner of a place called the Lion's Den, and Bulgar made the loan, taking Comstock's watch as security. Two days later Clarence and Evelyn were arrested in the Oldsmobile sedan registered to Clarence. John Duarte was standing beside it. There was evidence of an arresting officer that the car had a ''sharper exhaust report to it than normally is on a car.'' The Lanes also inspected it and said it resembled the one they had seen near their home, and Elmer Sims identified it as the one he had towed in the night of the burglary of La Brasca's service station. The 13-year-old son of Evelyn testified that he heard his mother say to Clarence that ''If you went in the right way you would have got more.'' He also said that he had ridden in Clarence's car with his mother, and it made ''a pretty loud noise'' as though the muffler might be cracked. Clarence Duarte, after his arrest, made contradictory statements with respect to his activities.

We are satisfied that the foregoing shows sufficient corroboration of John Duarte's testimony.

In the recent case of *People* v. *Henderson*, 34 Cal.2d 340, 342 [209 P.2d 785], our Supreme Court said that corroborating evidence is sufficient if it connect the defendant with the commission of the crime in such a way as reasonably to satisfy the fact-finding body that the accomplice is telling the truth; and that inculpatory participation need not be direct nor need it extend to every fact and detail; that it may be circumstantial, and is sufficient, even though slight, if it tends to connect the defendant with the commission of the crime. Also see *People* v. *Trujillo*, 32 Cal.2d 105, 110-111 [194 P.2d 681], *People* v. *Negra*, 208 Cal. 64, 69-70 [280 P. 354], *People* v. *Yeager*, 194 Cal. 452, 473 [229 P. 40], cited in the Henderson case.

■ Appellants' second contention on appeal is that the trial court erred in failing to give to the jury several proposed instructions on circumstantial evidence. The proposed instructions were apparently based upon an assumption that a finding of the guilt of these appellants was dependent upon circumstantial evidence alone. Such is not the case. The testimony of

John Duarte was direct, and such circumstantial evidence as was relied upon was introduced in corroboration of his testimony. In *People* v. *Savage,* 66 Cal.App.2d 237, 247 [152 P.2d 240] (hearing in Supreme Court denied), it was held that where the proof is not entirely circumstantial it is not error to refuse an instruction requiring the jury to adopt the interpretation which would admit defendant's innocence, and reject that which would point to his guilt.

In *People* v. *Klinkenberg,* 90 Cal.App.2d 608 [204 P.2d 47, 613] (hearing in Supreme Court denied), it was stated that where there is direct evidence connecting defendants with the commission of the offense charged, and circumstantial evidence is only incidental or corroborative, the court is not required to instruct the jury on the rules of evidence applicable to circumstantial evidence; that it is not the law that each fact in a chain of circumstances that will establish a defendant's guilt must be proved beyond a reasonable doubt; that a reasonable doubt that would warrant acquittal is one that results or arises from a consideration of all of the evidence.

The trial court in this case did instruct the jury that if they could reasonably account for any fact in the case upon a theory that would admit of defendants' innocence, it was their duty to do so, and that if they had any reasonable doubt of their guilt they should acquit them. On circumstantial evidence it instructed them as to the difference between direct and circumstantial evidence, that crime may be proven by circumstantial as well as direct evidence, but that facts and circumstances must be consistent with each other, and inconsistent with any reasonable theory of innocence, and must show guilt beyond a reasonable doubt.

Instructions must be read as a whole, and as we read those given we are satisfied that the jury in this case were adequately and correctly instructed.

The judgments and the orders denying a new trial are affirmed.

Peek, J., concurred.