[Crim. No. 2148. Second Appellate District, Division One.—April 30, 1932.]

THE PEOPLE, Respondent, v. DAISY I. DE VOE, Appellant.

William B. Beirne for Appellant.

U. S. Webb, Attorney-General, John D. Richer, Deputy Attorney-General, Buron Fitts, District Attorney, and Frank W. Stafford, Deputy District Attorney, for Respondent.

CONREY, P. J.—In this action the defendant presents three appeals:. 1. An appeal from an order made and entered on the second day of February, 1931, denying appellant's motion for a new trial; 2. An appeal from an order made and entered on the tenth day of February, 1931, placing appellant upon probation for a period of five years, suspending imposition of judgment and sentence, and ordering appellant confined in the county jail of Los Angeles County for a period of eighteen months; 3. An appeal from an order made and entered on the twenty-fourth day of February, 1931, denying appellant's motion for a new trial made upon the ground that judgment had not been pronounced within the statutory period prescribed by section 1191 of the Penal Code.

By indictment the defendant was charged in thirty-seven counts with the crime of grand theft. To each count the defendant pleaded not guilty. Two counts were dismissed at the trial, and on thirty-four counts the defendant was found not guilty. On count seven, wherein defendant was charged with the theft of $825, the defendant was found guilty. The verdict was returned and duly entered in the minutes of the court on the twenty-third day of January, 1931, and the pronouncing of judgment as to count seven was set for January 26th. At this time the defendant presented a motion for a new trial, and hearing on said motion and the pronouncing of judgment were continued to February 2d. On February 2d the motion for new trial was denied, and the defendant applied for probation. The

passing on said application for probation and the pronouncing of judgment were thereupon set for February 10th. On February 10th defendant made application for permission to withdraw her application for probation. Permission to withdraw application for probation was denied, a probation report was filed, and the court ordered "that proceedings as to count 7 of the indictment be suspended and said defendant granted probation for a period of five years under the following conditions: the first eighteen months of said probation period, defendant shall remain in the county jail. Defendant shall report to probation officer and follow his instructions."

On February 11th the defendant filed a notice of appeal "from the order and judgment of the court made and entered in the above-entitled cause on the 10th day of February, 1931, placing said defendant on probation for a period of five years and ordering that she be confined in the county jail of Los Angeles county for a period of eighteen months."

On February 4, 1931, the defendant filed a written notice of appeal "from the order of the above-entitled court made and entered on the 2nd day of February, 1931, denying her motion for a new trial of the above-entitled cause, which motion was made by defendant in open court on the 26th day of January, 1931."

Some phases of the case in relation to said probation order were brought to the attention of this court in June, 1931, upon an application of appellant for a writ of *habeas corpus*, at which time the petitioner was remanded to custody. (*Matter of De Voe*, 114 Cal. App. 730 [300 Pac. 874].) In that case the record of the proceedings of the court upon the application of defendant to be admitted to probation and her subsequent attempted withdrawal of that application, was the same as the record of the same transactions as shown in this appeal. As was indicated in the decision in said *habeas corpus* case, we are satisfied that the trial court, in the exercise of its discretion, was justified in making its order by which the request of the defendant to withdraw her application for probation was denied; that the subsequent action of the trial court in granting probation to the defendant must be considered solely as the result of her own application directed to that end; and that

the said application for probation constituted a waiver of the defendant's right to have judgment pronounced prior to the making of an order granting to her the probation which she sought. It follows that the appeal of defendant from the order 'placing her on probation for a period of five years and ordering that she be confined in the county jail of Los Angeles County for a period of eighteen months, is without merit. ■ This leads to the further consequence that the appeal of the defendant from the order entered on the twenty-fourth day of February, 1931, denying her motion for a new trial upon the ground that judgment had not been pronounced within the statutory period prescribed in section 1191 of the Penal Code, is without merit.

There remains for consideration the appeal of defendant from the order made on February 2, 1931, denying her motion for a new trial. Appellant admits that the evidence is sufficient to support the verdict. She contends, however, that there was other evidence amply sufficient to have justified a verdict of acquittal if the jury had so found. And she contends that the errors in the trial, of which she complains, were more prejudicial to her than such errors might be in a case where the evidence unquestionably establishes the guilt of a defendant. The questions before us, therefore, cover the errors assigned and also the probable effect of such errors as may have been committed.

■ First we have a series of rulings whereby the court permitted the introduction of evidence to prove misappropriation by defendant of funds and other property of the complaining witness, other than those included in the charges of the indictment. (App. Opening Brief, pp. 21 to 75.) We are of the opinion that the court did not err in allowing the introduction of this evidence. Appellant had been the employee, in a confidential position, of the complaining witness. On leaving this employment appellant had taken away sundry items of her employer's property. This included checks, check-books, letters, jewelry, etc. When the check-books were taken from defendant, some of the checks which had been issued, as shown by the check-stubs, and which had been paid, were missing, and in connection with some of the accusations in this case it became necessary to trace the missing checks. In some instances (as in the one

upon which conviction was obtained) there was evidence that the employer had signed the check in blank and left it with the defendant to be filled out in accordance with given instructions. It was necessary, therefore, to ascertain first whether defendant violated the employer's instructions and appropriated the money to use different from the instructions, and second, whether the misapplication was accomplished with criminal intent. It was for the purpose of proving the existence of a criminal intention and plan of defendant in relation to her employer's affairs that the evidence now in question was admitted.

Appellant contends that the court erred in refusing to permit her to give testimony by way of explanation of some of the facts relating to the above-mentioned transactions. Apparently these rulings related to improper forms of questions, and irrelevancies in answers given. The defendant was not prevented from producing such evidence as was appropriate to the matters under investigation.

Another assignment of error: That the trial court erred in permitting the prosecution to cross-examine appellant with reference to certain testimony given by her before the grand jury, and with reference to appellant's refusal to answer certain questions before that body upon the ground that they might tend to incriminate her. It does not appear that in the trial court any objection was made to this cross-examination. It is suggested by respondent that the questions were appropriate under the provisions of section 926 of the Penal Code. At any rate, on this record, the matter should not be considered. Present counsel for defendant, it may be noted, was not her attorney at the trial of the action.

Misconduct of the court, in making certain comments about the progress of the trial, is now charged by appellant, although no such complaint was made in the trial court. We think that the point is without merit.

The defendant asked the trial court to instruct the jury as follows: "If the evidence relating to any circumstance in this case is, in view of the evidence, susceptible of two interpretations, one of which would point to defendant's guilt, and the other would admit of her innocence, then, it is your duty in considering such evidence,

to adopt that interpretation which will admit of the defendant's innocence and reject that which would point to her guilt.'' It is contended by appellant that the court erred in refusing this instruction.

The proposed instruction correctly states the law, and should be given whenever proof of some essential fact is necessary to sustain a verdict against the defendant, and the proof of such fact depends upon circumstantial evidence. (*People* v. *McClain,* 115 Cal. App. 505 [1 Pac. (2d) 1085].) But where the prosecution relies for conviction upon direct evidence, the circumstantial evidence, if any, being merely incidental to and corroborative of the direct evidence, an instruction on the law of circumstantial evidence need not be given. (8 Cal. Jur., p. 369; *People* v. *Lapara,* 181 Cal. 66 [183 Pac. 545].) In the present case, since appellant was convicted on only one count, the assignment of error must be tested by that count only, and the evidence in relation thereto. The principal evidence in relation to that count consists of the testimony of the complaining witness, and that of the defendant. In harmony with the decisions above cited, it appears to be a reasonable conclusion that the court did not err in refusing the requested instruction.

 Defendant moved for a new trial, basing her motion upon all of the statutory grounds for such motions. One of these is, that the verdict of guilty rendered by the jury was decided by lot. Appellant, claiming that the jurors had refused to make affidavits as to whether or not the verdict had been arrived at by lot and chance, asked leave to examine the jurors in open court. This was permitted. Nevertheless, appellant now contends that the court erred in refusing to allow the witnesses to answer some of the questions put by appellant's counsel. The court's rulings were made in accord with its effort to confine the inquiry to the single subject of the inquiry, viz.: Was the verdict decided by lot or chance? The questions which the court ruled out were part of a line of inquiry well calculated to exceed the permitted limit of investigation into the deliberations and proceedings by which a jury arrives at a verdict. These questions called upon the witness to give information concerning matters connected with the proceedings of the jury, *other than* the single permissible inquiry relating to

the conviction on count seven as (possibly) the result of a determination of the issue by chance or lot. This may not be done. (*Whiting* v. *Squeglia,* 70 Cal. App. 108, 118 [223 Pac. 986]; *People* v. *Reid,* 195 Cal. 249, 261 [36 A. L. R. 1435, 232 Pac. 457].)

We have reached the conclusion that the order denying defendant's motion for a new trial is without error.

The orders from which defendant appeals are, and each of said orders is, affirmed.

York, J., concurred.

HOUSER, J., Concurring.—I concur in the judgment herein, with the exception only of that part thereof by which it is held that no error was committed by the trial court in its hearing of the motion for a new trial wherein defendant was denied the right of adducing evidence relative to the question of whether in arriving at its verdict the jury reached its conclusion "by lot, or by any means other than a fair expression of opinion on the part of all the jurors". (Subd. 4, sec. 1181, Pen. Code.)

In ordinary circumstances and as applied to facts which usually are present where the integrity of a verdict is challenged, I should have no hesitancy in subscribing to the doctrine so generally announced in the prevailing opinion herein. But in the instant case, as portrayed by the record of the proceedings which occurred at the time when the hearing was had, the situation is of such an extraordinary character that, in my opinion, the rule which forbids a juror to impeach his verdict has no application. Indeed, as later may be made to appear herein, by the terms of the statutes, as well as by judicial construction of the law, where on a motion for a new trial the contention of the defendant in a criminal action is to the effect that the verdict was reached "by chance", the affidavit of a juror to that effect is admissible.

In order that a better understanding may be had of the situation which prevailed at the time when the defendant was denied the right to inquire from the members of the jury into the manner adopted and pursued by the jury in arriving at its verdict of guilt of the defendant as to a particular count set forth in the indictment, it is deemed

advisable that a more complete statement of the pertinent facts be made herein. As is indicated in the opinion of my associate, because of the fact that "the jurors had refused to make affidavits as to whether or not the verdict had been arrived at by lot and chance", leave was granted "to examine the jurors in open court". At the time when on such examination the defendant attempted to elicit from the members of the jury the facts which related to the alleged irregularity or misconduct of the jury in the matter, the following *verbatim* questions and answers, together with remarks made by the trial judge in connection therewith, as appears from the reporter's transcript of the proceedings, will serve to exemplify the attitude of and the ruling by the trial court with reference to a consideration of the ultimate question of whether the verdict of the jury was "decided by lot, or by any means other than a fair expression of opinion on the part of all the jurors" (subd. 4, sec. 1181, Pen. Code):

"Q. Will you state to the court the manner in which the vote on that verdict was arrived at?

"Mr. Clark (Deputy District Attorney): Object to that on the ground it is too general.

"The Court: Sustained. . . .

"Now, the only inquiry you can make— . . . You will have to confine your inquiry to the question, in effect, was this verdict arrived at by lot or chance. Now, the witness ought to know what that means and I am explaining my position to you to save us trouble in connection with the inquiry you are about to make.

"Mr. Beirne (Attorney for Defendant): I intentionally refrained from that question as I figured it was calling for a conclusion of the witness.

"The Court: No, I think those are simple questions in the English language that we all know, and it is not objectionable because it calls for a conclusion of the witness. . . .

"Q. (By the Court): You know what deciding a question by lot or chance means, do you not, Mr. Smith? . . . A. I do.

"Mr. Beirne: Was the verdict of the jury in this case on count seven, as returned, arrived at by the jury by lot or chance?

"The Court: Answer the question.

"A. *Well, I don't know just exactly how to answer it.*

"The Court: You don't know how to answer it?

"A. I can tell it was voted on by one vote, arrived at by one vote.

"The Court: You mean they took a ballot on it?

"A. Took one ballot on it, yes. . . . .

"The Court: Did you put anything in a box, or draw anything out, do any speculating? A. No, we did not.

"Mr. Beirne: With respect to that question, your Honor, if your Honor will proceed and ask further questions as to other methods of chance, I think that would be very proper, but that is not the only method of chance or lot.

"The Court: I think the witness has answered the question. . . .

"Mr. Beirne: I think the court should have before it the evidence of how that last verdict was arrived at.

"The Court: I am not interested in it at all.

"Mr. Beirne: So that the court can determine whether it was a verdict by lot or chance.

"The Court: I am not interested in that speculation. . . .

"Mr. Beirne: For the purpose of the record may it be considered I have asked this juror the following question, asked him whether or not the verdict was arrived at in the manner as described—

"The Court: No, that would not be giving the juror and the jurors the protection to which they are entitled, . . . Ask the question in the form that you want it and you understand, don't answer it until the court rules.

"Mr. Beirne: Q. Mr. Smith, was the verdict of guilty on count seven arrived at in the following manner by the jurors in this case: It was agreed among all the members of said jury that the vote of not guilty upon the three counts aforesaid should be set aside, and the same was set aside, and it was then decided and agreed upon, which decision and agreement was immediately acted upon and executed by said jury, that the eight members of said jury who were contending for a verdict of not guilty on all counts, should vote guilty on one count of said indictment, and for a verdict of not guilty upon all other counts of said indictment, and the members of said jury who contended for a verdict of guilty on various of the counts of

said indictment other than the three counts on which they had formerly voted not guilty, should vote for a verdict of not guilty on thirty-four counts of said indictment and for a verdict of guilty upon one count thereof; that this method was planned and adopted as a means of relieving the members of said jury from further physical restraint—

"The Court: Don't answer the question.

"Mr. Beirne: That this plan and proposal was accepted by all members of said jury, and it was further agreed as a part and parcel of said plan that the count upon which all members had agreed to vote guilty should be selected at random; that thereupon count seven of the indictment was so selected at random, a verdict of guilty was returned thereon without due, or any deliberation as to, or consideration of, the evidence that had been adduced upon said count and without due, or any consideration of the law applicable thereto.

"Mr. Clark: I object to that on the ground it is immaterial.

"The Court: Objection sustained."

In effect, it was then stipulated that had the remaining jurors been asked questions identical with those asked of the one juror they would have "made the same answers and the court made the same rulings. . . . " In connection with an inquiry made by counsel for defendant of the deputy district attorney in charge of the prosecution as to whether he would stipulate that "they (the jurors) would answer that question", the judge of the trial court remarked, "I wouldn't let them answer it, if he did stipulate to it."

From a consideration of the quoted portion of the reporter's transcript of the proceedings which occurred at the time when the matter was before the court, it thus becomes plain that the only pertinent questions which defendant was permitted to ask of the juror and to have answered by him were the bald interrogatories as to whether the verdict was "arrived at by the jury by lot or chance"; and as to whether the jurors "put anything in a box, or draw anything out, do any speculating". As to the first question, it is clear that the juror expressed himself as not knowing "exactly how to answer it". As to the second question, although the juror indicated that nothing was either

placed within "a box" or withdrawn therefrom, or that "any speculating" was resorted to by the jury in arriving at its verdict,—it is not without the bounds of probabilities that some unidentified practice or form of other modes of selection by lot or by chance was adopted and carried out by the jury in reaching its decision. At least as much may be readily surmised from the reply made by the juror that he did not know "just exactly how to answer" the question as to whether the verdict was "arrived at . . . by lot or chance". That such speculation is not far from the truth, may also be indicated by the fact that as to the particular count of the indictment of which defendant was found guilty, judged from the record herein, the evidence introduced by defendant not only was sufficient to have caused the existence of a reasonable doubt in the "mind" of the jury as to the guilt of defendant, but, going beyond such a situation, the evidence very largely preponderated in favor of the innocence of defendant; whereas, as to each of several other counts in the indictment of which defendant was found "not guilty", the evidence taken as a whole, would appear to have been much more satisfactory in quality and quantity and more nearly freed from any question of reasonable doubt regarding the guilt of defendant.

As hereinbefore has been indicated, the rule by which jurors "are legally disabled to impeach their verdict by any means" does not extend to a situation wherein the verdict is challenged on the ground that it "had been decided by lot". (*People* v. *Reid,* 195 Cal. 249, 261 [36 A. L. R. 1435, 232 Pac. 457].)

In the cited authority (195 Cal. 249, 261) it is said: "Upon well-grounded considerations of public policy jurors are legally disabled to impeach their verdict by any means, whether it be by affidavit or by testimony or by extrajudicial statements. (*People* v. *Azoff,* 105 Cal. 632, 635 [39 Pac. 59]; *People* v. *Findley,* 132 Cal. 301, 308 [64 Pac. 472]; *Saltzman* v. *Sunset T. & T. Co.,* 125 Cal. 501, 504 [58 Pac. 169]; *Fredericks* v. *Judah,* 73 Cal. 604, 607 [15 Pac. 305]; *Siemsen* v. *Oakland S. L. & H. Elec. Ry.,* 134 Cal. 494, 498 [66 Pac. 672].) This is the general rule throughout the United States and it is almost universally held that the only exceptions to it are those in

which the legislature of the several states have by express enactment authorized such attack upon the verdict (see notes to 5 L. R. A. 523; 11 L. R. A. 706; 12 Am. Dec. 143; 29 Cyc. 982). *The only exception so made in this state is in the case of so-called 'chance verdicts'.* (Code Civ. Proc., sec. 657, subd. 2.)" See, also, *People* v. *Kromphold,* 172 Cal. 512, 524 [157 Pac. 599], and authorities there cited.

Subdivision 4 of section 1181 of the Penal Code is to the effect that when a verdict has been rendered against a defendant the court may grant a new trial "when the verdict has been decided by lot, or by any means other than a fair expression of opinion on the part of all the jurors". By subdivision 2 of section 657 of the Code of Civil Procedure it is provided that a verdict may be vacated and a new trial granted "whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance", and that *"such misconduct may be proved by the affidavit of any one of the jurors".*

That the usual practice in this state has been to set up in affidavits the *facts* which constitute the alleged misconduct of the jury, rather than the bare statutory conclusion which may be inferred from the facts, is readily established by a consideration of any of the numerous cases which have been ruled upon by the appellate tribunals of this state wherein a question like that here under consideration has been a subject of appeal. Nowhere has it been even intimated that an affidavit containing the mere conclusion of a juror, or any other person, that the decision rendered by the jury was a "chance verdict", or that it was "arrived at by lot", would be sufficient either in form or in substance. Necessarily the question of whether the alleged action or conduct of the jury in the premises constituted a decision by that body "by chance", or "by lot", is one of law to be determined by the trial court on the consideration by it of the relevant facts.

Although by the language contained in subdivision 2 of section 657 of the Code of Civil Procedure it is provided that the misconduct of the jury "may be proved by affidavit", not only in reason, but as well in view of certain

decisions by the Supreme Court of this state in analogous situations relative to alleged misconduct of juries, it may not be doubted that on the hearing of a charge of misconduct of the character of that here under consideration evidence of such misconduct is not limited to "the affidavit of any one of the jurors", but that such misconduct may be established by any competent evidence thereof, including the oral testimony of jurors or other persons. (*People* v. *Tucker*, 117 Cal. 229, 230 [49 Pac. 134]; *People* v. *Sullivan*, 129 Cal. 557, 562 [62 Pac. 101].) Particularly should such rule obtain where, as in the instant case, the jurors have refused to make an affidavit and no other means of establishing their misconduct is available to the aggrieved party.

To my mind it is quite clear that, in the absence of any express statute by the terms of which the method of establishing the ultimate fact as to whether a challenged verdict was "arrived at" by lot or by chance is indicated, the aggrieved party should not be restricted either in the detail of pertinent facts which may be set forth in an affidavit of a juror or other person, or in the introduction in evidence of competent and relevant facts either by oral examination of jurors or other persons, or by the introduction of writings or other documents. In other words, on a hearing of a charge of misconduct of a jury to the effect that its verdict was reached either "by a resort to the determination of chance", or that the verdict was decided "by lot", the same rules should apply in the determination of such an issue as ordinarily obtain in the trial of an action or other proceeding before the court. The proper object of a trial or any proceeding is to arrive at the relevant and pertinent truth. Our laws pretend to vouchsafe to a defendant that on a criminal charge preferred against him he will receive a fair trial. Although it is of great importance that the guilty be punished, such a termination of the trial of a guilty violator of a criminal statute fades into insignificance when are considered the possible, or even probable, results which may flow from a continual denial of justice. In my humble opinion the precedent which will or may be eventually established by the judicial affirmance of what amounts to a refusal to hear competent evidence relating to a charge of misconduct

of the jury in a particular such as is herein specified is far-reaching in its effect and completely overshadows the possible failure to bring to justice a probably guilty defendant.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 13, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 26, 1932.