[Crim. No. 4538. Second Dist., Div. Two. Apr. 19, 1951.]

THE PEOPLE, Respondent, v. MARY ELIZABETH MANSOUR, Appellant.

Zeman & Hertzberg and Harrison W. Hertzberg for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

MOORE, P. J.—Defendant demands that her conviction of armed robbery be reversed on the grounds of (1) errors in refusing to give certain instructions and (2) the "verdict is against the weight of the evidence." She appeals from the judgment of conviction and from the order denying her motion for a new trial.

The victim of the robbery is one Boyd Welin, coowner of a pharmacy in Pasadena. Having entered his store at 8:30 a.m. he was soon alarmed by the rattling of the front door. A stranger entered and concealed himself behind a counter. As the merchant advanced toward the front, the intruder jumped out, drew a .38 caliber revolver and commanded the pharmacist to raise his hands, return to the rear and lie down. His hands were tied by the bandit who demanded money and narcotics. On being informed where to get the drugs and that the money was in a canister, he made a search but soon returned to tell Welin that was not what he desired; he wanted "morphine and dilaudide." At that juncture, the colored porter, Tyler, arrived. After the latter had knocked a second time, the stranger signaled him to go to the rear door. Tyler called to Welin to inquire whether he was all right. The druggist's affirmative answers were given at the direction of the robber. When Tyler approached the back door the bandit grabbed his coat in an attempt to jerk him across the threshold. But the porter ran and called for the police. Thereupon,

Baranik, for that was the stranger's name, made his exit, crossed the street to a convertible car parked about 150 feet from the rear door of the pharmacy, entered the right side of the vehicle which was driven rapidly away by appellant. A bystander having got the license number of the departing automobile, it was promptly spread by radio broadcast. Two police officers of Azusa pursued the fleeing car as they traveled 75 miles an hour while appellant kept in the lead. The pursuit ended in San Gabriel just after Baranik had escaped from the wild machine.

In response to the inquiring officer, appellant said, "he put a pistol in my back, put a gun in my back" which she repeated after having been reminded that the man's clothes were still in her machine. At the police station she was asked where the man left the car and "how did you get into this mess?" She replied, "I stopped in Pasadena to get a sandwich and he had a pistol. He put it in my back." She stated that he was about 56, but declined to answer further. But her silence did not forestall a successful search. The officers discovered that the wayward couple had spent several days at the home of Mrs. Baseel, sister of appellant, in Pomona prior to the day of the robbery, pretending that they were married. Before noon on the day of the crime Baranik called at Mrs. Baseel's, left his mackinaw coat, borrowed $10, stated that there had been some trouble and departed.

At her trial appellant testified that she had been a gambler for more than 15 years; had lived with a gambler named Barnett (referring to Baranik) in Los Angeles and had with him visited Mrs. Baseel in Pomona; about April, 1948, she became addicted to the use of morphine, heroin and dilaudide after using them for a kidney ailment; such addiction had continued to the date of the robbery, January 28, 1950; Baranik was also a drug addict and procured narcotics for her; on the morning she drove to Mr. Welin's pharmacy she had no kind of narcotic and had been without them for some time; when they could not find the man who had supplied them, Baranik suggested a druggist in Pasadena from whom the medicament might be purchased; she was very ill, had only $5.00; Baranik had money and was pretty sure he could get narcotics at the Pasadena store, but made no mention of a robbery. Since she was ignorant of their destination Baranik directed her course to Welin's pharmacy and to the place for parking her automobile 150 feet down the street from the rear of the store. Because something was wrong with her

steering wheel she always used the largest space available. Her companion told her to wait while he was trying to buy the coveted drug. She neither saw a revolver on Baranik nor learned from him that he possessed one. Very ill, she sat in her car waiting for him when suddenly a commotion jarred the quiet of the vicinity as Baranik came running, jumped into the machine and told her to drive and get away from there. She testified that after he had commanded her to drive away, she asked what happened before she started; that she was too excited to know where she was driving; that Baranik told her to drive faster, the police were coming; that she did as directed and made many turns; that Baranik changed coats and as he jumped from the car he directed her to keep going but he never told her that a robbery had occurred.

She testified that she had no intention of aiding Baranik to commit a robbery when she drove him to the drugstore and that she had no such intent in driving away; that she feared perhaps the law had apprehended the druggist for selling narcotics; that her first knowledge of the robbery was at the preliminary hearing. She explained her statements to the police that a gun had been stuck in her back because it was true; she had stopped for a sandwich because she did not know what had happened and to avoid telling that she had been trying to buy narcotics. She admitted her denial of knowledge of Baranik and testified that she did not know he had a gun until a few minutes after he entered her car.

Baranik had visited the Baseel home during the preceding two and a half years and had often driven appellant's convertible car.

### THE INSTRUCTIONS REFUSED

The emphasized assignment of error is the court's refusal to direct the jury that where the evidence relied upon for conviction is wholly circumstantial it must be consistent with no theory other than the guilt of the accused. In support of her thesis she contends that since she denied all knowledge of Baranik's purpose to commit a robbery there was no proof of her having knowingly aided and abetted him except such inferences as might be drawn from the circumstances shown. In line with such contention she submitted and the court rejected the following instruction: ''You are instructed that in order to convict upon circumstantial evidence, it is necessary not only that all the circumstances concur to show that the defendant committed the crime charged, but it must also be shown that these circumstances taken as a whole are incon-

sistent with any other rational conclusion, and it is not sufficient that the circumstances proven coincide with, account for, and, therefore, render probable the hypothesis sought to be established by the prosecution, but they must exclude to a moral certainty every other hypothesis, except the single one of guilt, or you must find the defendant not guilty." Appellant contends that (1) such instruction was necessary for the reason that "the entire crime or a necessary element thereof was presented to the jury wholly by circumstantial evidence"; (2) the aid rendered to the actual bandit was given without guilty knowledge on the part of appellant.

From the facts established, briefly outlined above, and from a scrutiny of appellant and her several conflicting statements the jury were not without proof from which it could be reasonably inferred that appellant had guilty knowledge of Baranik's intention to commit a robbery. They were both addicts; both had suffered several days for want of the drugs, and they lived in the intimate relationship of spouses. Necessarily she knew of his possession of the revolver and since he had not such power of self-control as would restrain him from committing a major crime, deliberately planned, the jury could from their knowledge of human passions and of the behavior of man when reduced to extremities, reasonably infer that appellant's paramour reassured her that he would obtain the dilaudide and heroin even though he should be compelled to do violence in order to succeed.

It is incumbent upon a court in a criminal case to instruct the jury fully and fairly upon the law relating to the facts of the case. (*People* v. *Bender*, 27 Cal.2d 164, 176 [163 P.2d 8].) Since the evidence in the instant action bearing upon appellant's intent is circumstantial, an instruction should have charged the jury that the facts must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion. Therefore, the refused instruction was a correct one and should have been given. (*Ibid*, p. 177.) However, the failure to include in an instruction a proper statement of the principle that circumstantial evidence must be inconsistent with any other rational hypothesis than that of guilt does not always require a reversal. (*People* v. *Koenig*, 29 Cal.2d 87, 93 [173 P.2d 1]; *People* v. *Bender, supra*.) While holding that such an instruction should have been given, the court determined in *People* v. *Webster*, 79 Cal.App.2d 321 [179 P.2d 633], that failure to do so was not sufficiently prejudicial to warrant a reversal. The

same situation prevails in the case at bar. Besides the aggravating facts which justify inferences of guilt, the court generously instructed the jury on the doctrine of reasonable doubt and upon the elements of proof required in cases depending upon circumstantial evidence; the significance of circumstantial evidence; the virtues of direct evidence; the jury's duty where the proof is susceptible of two reasonable constructions, one favoring guilt, the other favoring the innocence of the accused and their duty when one construction of the evidence is reasonable while the other is unreasonable with the admonition that the entire proof must carry the convincing force required to support a verdict of guilt, concluding *"when the case which has been made out by the people against a defendant rests entirely or chiefly upon circumstantial evidence, before the jury may find a defendant guilty based upon such evidence, each fact which is essential to complete a chain of circumstances that will establish the defendant's guilt must be proved beyond a reasonable doubt."*

Thus, in the instant action, the instructions given were substantially the same as those given in *People* v. *Webster*, 79 Cal.App.2d 321 [179 P.2d .633], with the addition of the instruction last above quoted which was one of those the refusal of which was complained of in that case. Indeed, the last quoted passage was too liberal. It has been held to be incorrect as a statement of the law since it is not necessary that each fact in a chain of circumstances that will establish a defendant's guilt be proved beyond a reasonable doubt. The doctrine of reasonable doubt applies to proof of guilt, and not to the establishment of each incident or event inculpating· the defendant. (*People* v. *Nunn*, 65 Cal.App.2d 188, 195 [150 P.2d 476]; *People* v. *Klinkenberg,* 90 Cal.App.2d 608, 632 [204 P.2d 47, 613].) But as if to make it impossible for the jury to overlook the necessity of their giving appellant every advantage known to criminal procedure to be acquitted of the accusation, they received the following addition to the charge: *"One who does not actively commit the offense, but who aids, promotes, or encourages its commission either by act or counsel or both, is not deemed by law to be guilty and should not be found guilty of the crime unless he did what he did knowingly and with criminal intent. To abet another in the commission of a crime implies a consciousness of guilt in instigating, encouraging, promoting, or aiding the commission of such criminal offense."* The jury was thereby instructed that they must specifically find beyond a reasonable doubt that the

appellant did what she did knowingly and with criminal intent before she could be found guilty and they are presumed to have understood such instruction. The sum total of the instructions given by the court upon circumstantial evidence and reasonable doubt and the rule requiring the jury to be guided by that view of the evidence that indicates innocence, were sufficient to compel a reasonable jury to know that the circumstances proved must be entirely consistent with the theory of guilt and contrary to any other reasonable conclusion before they could find appellant guilty. The conclusion cannot be avoided that a reversal on account of the refusal would be violative of the constitution. (Art. VI, § 4½.)

Appellant assigns as prejudicial error the refusal of an extended instruction* requiring the jury to find as a condition of convicting her that any assistance she rendered to Baranik in the commission of the robbery was given knowingly and with criminal intent. She contends "that such aid was given innocently and without any guilty knowledge." In proof of her being under the influence of drugs she cites the testimony of an arresting officer that "she had dark circles under her eyes, pupils were dilated and eyes dark and sunken, her head shook and she appeared greatly agitated, and later she appeared to be under the influence of narcotics." That testimony was supported by the opinion of another officer. She contends that her abnormal mental state should have been

---

*"No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the jury may taken into consideration the fact that the accused was intoxicated at the time in determining the purpose, motive or intent with which he committed the act." (Pen. Code, § 22.)

The word "intoxication" as used in the above instruction is not limited to intoxication which is caused by alcoholic beverages, but includes intoxication produced by narcotic drugs.

You are further instructed that while intoxication, voluntarily acquired, is not a defense to crime, still, where the offense charged is one requiring the existence of a specific intent or state of mind, unless the proof shows to a moral certainty and beyond a reasonable doubt that such intent or state of mind did exist, the defendant is entitled to an acquittal, and the absence of such criminal intent or state of mind may be established by evidence that at the time of the alleged offense the accused was so intoxicated as to be incapable of forming such intent or state of mind.

In the instant case, the defendant may not be lawfully convicted except by proof to a moral certainty and beyond a reasonable doubt that she aided and abetted the commission of the robbery as alleged in the information. In order for one to be convicted by aiding and abetting, there must be proof to a moral certainty and beyond a reasonable doubt that any assistance given was done knowingly and with criminal intent.

considered in determining whether she was possessed of the requisite intent to commit a robbery. Under proper instructions the jury found that she intended to aid and abet the robbery. Such finding of fact is conclusive upon the reviewing court where there is any substantial evidence to support it. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) But despite the testimony favorable to her contention, the racing of her car around corners and over the streets of Azusa, her fairy tale about Baranik's holding a gun against her body as she operated the vehicle and her having stopped at Pasadena to get a sandwich, argue forcefully that she was not under the influence of narcotics but wilfully attempted to deceive the officers. She testified that she had been without morphine and its derivatives for some time and had no available supply. She did not contend that her want of knowledge of Baranik's intention to rob was due to her use of such drugs. But to give her the benefit of her addiction to the use of them the court instructed the jury: "Where a person commits an act without being conscious thereof, such act is not criminal even though, if committed by a person who was conscious it would be a crime." That instruction allowed the jury to acquit her if they had a reasonable doubt that at the time of the crime she was not conscious of the criminal character of her act whether due to her ignorance of Baranik's intention or to the influence of narcotics. She was not by any instruction obliged to establish her knowledge of her paramour's criminal intention or the state of her assertedly dull consciousness. (*People* v. *Hardy,* 33 Cal.2d 52, 64 [198 P.2d 865].)

The case of *People* v. *Hill,* 77 Cal.App.2d 287 [175 P.2d 45], is cited by appellant in support of her contention that the judgment should be reversed because she knew nothing of what was being done in the pharmacy, or of what had been intended. It does not support her. The appellant Ingram in the cited case first met his codefendants less than three hours before the latter committed robbery. They induced him to drive them around for a while to look for some girls. After going to the south end of the city they asked him to park on a side street and await their return. He sat in his car, shut off his motor and went to sleep. On their reappearance after the robbery he switched on his lights. He did not see Hill's revolver, nor did either companion mention their criminal purpose to him. He neither instigated nor advised it, received no fruits of the crime or was he promised any. His companions

exculpated him and there was no reason for discrediting them. Baranik was not a witness at appellant's trial.

### EVIDENCE IS SUFFICIENT

By her assignment that the verdict is "against the weight of the evidence" appellant intended to say that there is no substantial proof of her intentional participation in the robbery. So considered it must be rejected. Baranik's belated assertion of her innocence to the court when he was sentenced is of no avail. ■ From the facts in evidence reasonable minds could fairly infer that appellant knowingly aided and abetted the robbery. She had consorted with Baranik for over two years; had lived with him in her sister's home; was with him during the days and nights while they suffered destitution of narcotics; conveyed him to the pharmacy in her own machine; parked where she would have ample space to turn. She testified that this was necessary because her steering wheel was difficult to turn; that on his return from the crime he pulled a .38 caliber revolver and ordered her to drive away; that she did so at the moment of his command and learned a few minutes later he had the gun. When sighted by the police she increased her speed to from 45 to 60 miles per hour, made many turns while so traveling. Having diminished her speed to allow her companion to escape, she accelerated to a high rate of speed before being overtaken by the officers. She told them about getting the sandwich and the strange man's putting the gun to her back, but that she did not know his identity. Her evident deceit and her attempt to shield her confederate, together with her presence at the scene of the crime, her hastily conveying Baranik beyond the environs of Pasadena and her numerous inconsistent statements were such facts as might reasonably convince the jury that she was a knowing abettor of a bold and daring brigand. In view of the nature of her long association with Baranik, it was a rational inference that she did not drive him 19 miles after leaving the pharmacy without ascertaining that the "some trouble" he had had was his robbery of the druggist, even conceding that she had no prior knowledge of his purpose. Knowing that she had no narcotic in her possession for the police to recover, after Baranik leaped from her car, had she been innocent, she would have stopped and waited for the police. She did not.

Judgment and order denying the motion for a new trial are affirmed.

McComb, J., and Wilson, J., concurred.