[Crim. No. 2684.   Third Dist.   Oct. 22, 1956.]

THE PEOPLE, Respondent, v. IMOGENE JOY YOKUM, Appellant.

John J. Golden for Appellant.

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Imogene Joy Yokum was charged by indictment with the murder of her husband, Donald Alfred Yokum. The jury found her guilty of murder in the second degree and she has appealed from the judgment pronounced on said verdict and from the order denying her motion for a new trial.

Appellant does not attack the sufficiency of the evidence to support the judgment, but contends that the trial court committed the following reversible errors: (1) Refusing to give three requested instructions: CALJIC Numbers 26, 27 and 28; (2) omitting four essential instructions upon a re-reading of the instructions to the jury; (3) exceeding permissible bounds when commenting on the evidence during

the charge to the jury; and (4) excluding evidence. Before discussing these contentions we shall give a brief summary of the evidence as shown by the record.

On December 6, 1955, defendant, Imogene Joy Yokum, shot and killed her husband, Donald Yokum, at their residence in Willits, California. The defendant, the Yokum children and the witness Marie Lancaster were present when Donald Yokum and the witness Vernon Shuster arrived at the Yokum residence about 3:30 or 4 p. m. that day. Then Mrs. Yokum proceeded to prepare a meal. The two men sat down at a table and drank several glasses of wine. Mrs. Yokum also had a glass of wine. Thereafter, defendant's mother came to the Yokum yard and defendant went out and talked with her. Then defendant returned to the house and told her husband about a suggestion made by her mother that the children attend a particular Sunday school. At this proposal Donald Yokum became very angry and stated that the children were not to attend Sunday school. Mrs. Yokum testified that Mr. Yokum referred to her parents in a derogatory manner, and then she referred to his parents in a derogatory manner. Then Mr. Yokum struck or slapped defendant several times about the head and she fell. Mr. Yokum appeared to be very violent and to be striking at her violently. He was somewhat intoxicated and while striking her made the statement that "he was going to beat the hell out of her." Mr. Shuster intervened and succeeded in pulling Mr. Yokum away from defendant. Mrs. Yokum then left the house and was next seen by Mrs. Lancaster on the service porch at the rear of the house. The defendant was crying, appeared very upset and told Marie that she was afraid of decedent and wanted to get away so there wouldn't be any more trouble and that she was going to leave. Marie then returned to the kitchen. This was the last time anyone saw defendant until after her husband was shot.

After Marie had returned to the kitchen and from five to fifteen minutes after the scuffle between defendant and her husband, the latter was sitting or standing and talking with Shuster. Shuster stated, "Well, I was just standing there talking to Don, and I just noticed him make a sudden lurch or dive, and I heard a shot, and he dropped." He did not hear either defendant or her husband say anything. Marie Lancaster heard the shot, turned and saw Yokum lying on the floor and saw defendant standing with a rifle in her hand.

Neither Mrs. Lancaster nor Mr. Shuster saw defendant before Donald Yokum was shot.

Defendant testified in her own behalf that when she left the utility porch she took the gun and started out to the front of the house to get the children and leave. Her husband had told her that he would kill her if she ever left him and she took the gun because she was afraid of him, thought that if he saw the gun he wouldn't come near her and that she did not intend to shoot anybody with it. As she approached her husband, he jumped up and started toward her. She felt terribly frightened and then the gun jarred in her hand. She did not know the gun was loaded.

When Mr. Olan Greenwood, Chief of Police of Willits, arrived at the premises shortly after the shooting, defendant and Mr. Shuster were sitting on the running board of a Model T automobile. She appeared to be somewhat disturbed but in general was fairly calm and was not hysterical. She appeared to have been drinking but was not drunk. Mr. Greenwood asked her, ''Who has been hit?'' She answered, ''Oh, it's Don, Olan, I just killed the son-of-a-bitch. He's in the house and the gun's lying over there.'' Mr. Greenwood entered the house, determined that Donald Yokum was dead, returned outside and she stated then, ''I hit him in the cheek, didn't I? How is he?'' She kept asking, ''How is Don?''

An autopsy was performed by Dr. Smalley who determined the cause of death as being a bullet wound in the head and neck. The bullet entered the left side of the face about the angle of the jaw, went into the right side of the neck and broke into fragments. From the direction of the bullet, which creased decedent's shoulder, it appeared to Dr. Smalley that the decedent had thrown up his shoulder in an apparent attempt to guard against the bullet.

Appellant contends that the court erred in refusing to give three instructions offered by her. The substance of these was as follows: (a) CALJIC Number 26 states that where the evidence is susceptible of two constructions, it is the jury's duty to adopt that construction which points to the defendant's innocence; (b) CALJIC Number 27 states that where circumstantial evidence is relied upon as proof of guilt to justify a conviction, the facts or circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion: (3) CALJIC

Number 28 states that each essential fact in a chain of circumstances must be proved beyond a reasonable doubt.

Appellant contends that such instructions are required where there are issues, the proof of which depends upon circumstantial evidence, and that here defendant's intent and state of mind could not be directly perceived or proved without inferences or presumptions, and so the proof of her intent and state of mind necessarily depended upon circumstantial evidence. Respondent contends that proof of defendant's guilt did not rest primarily or chiefly upon circumstantial evidence. Respondent summarizes this proof: The fact that defendant shot her husband was established by direct testimony; there were three eyewitnesses to the killing, which witnesses were Mr. Shuster, Marie Lancaster and defendant, each of whom testified at the trial. Respondent argues that there was no issue of self-defense presented at the trial because defendant testified that the shooting was accidental. Respondent claims that on the issue as to whether there existed sufficient provocation to reduce the crime to manslaughter, the prosecution established its case by direct evidence.

"Direct evidence is that which proves the fact in dispute, directly, without an inference or presumption, and which in itself, if true, conclusively establishes that fact." (Code Civ. Proc., § 1831.) "Indirect evidence is that which tends to establish the fact in dispute by proving another, and which, though true, does not of itself conclusively establish that fact, but which affords an inference or presumption of its existence." (Code Civ. Proc., § 1832.)

The terms "indirect evidence" and "circumstantial evidence" are interchangeable and synonymous. As is well stated in *People* v. *Goldstein*, 139 Cal.App.2d 146, at page 152 [293 P.2d 495]:

"Circumstantial evidence is that which is applied to the principal fact, indirectly, or through the medium of other facts, from which the principal fact is inferred. The characteristics of circumstantial evidence, as distinguished from that which is direct, are, first, the existence and presentation of one or more evidentiary facts; and, second, a process of inference, by which these facts are so connected with the fact sought as to tend to produce a persuasion of its truth. (Burrill on Circumstantial Evidence, 4, 5.) An inference is a conclusion as to the existence of a material fact that a trier of fact may properly draw from the existence of certain primary facts. (*Blank* v. *Coffin*, 20 Cal.2d 457, 460 [126 P.2d

868].) Inferences drawn from physical facts amount to circumstantial evidence. (*McCreedy* v. *Atlantic Coast Line R. Co.,* 212 S.C. 449 [48 S.E.2d 193, 196].) It has been said that circumstantial evidence, as distinguished from direct evidence, is testimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. (*Aday* v. *State,* 28 Okla. Crim. 201 [230 P. 280, 281].)''

In the instant case appellant was charged with the murder of her husband. ▮ Murder is the unlawful killing of a human being with malice aforethought. ▮ It is true that when the evidence shows an unlawful killing to have been committed a presumption arises that the killing was done with malice aforethought and that the killing was murder. ▮ To find appellant guilty of either first or second degree murder one of the elements required to be proved was guilty intent or malice aforethought. The only direct testimony disclosed by the record upon the question of defendant's intent or state of mind at the time of the shooting was given by her. She testified that she did not intend to shoot anybody with the gun, that the gun jarred in her hand and that she did not know that the gun was loaded. Here a material and essential element consisted of defendant's state of mind at the time of the shooting, which element was necessarily shown by circumstantial evidence.

In *People* v. *Yrigoyen,* 45 Cal.2d 46 [286 P.2d 1], the Supreme Court found reversible error in the court's failure to give on its own motion an instruction embodying the principle (CALJIC Number 27) that to justify a conviction on circumstantial evidence the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion. In that case proof of guilt was not entirely circumstantial as in *People* v. *Bender,* 27 Cal.2d 164 [163 P.2d 8], cited by respondent. The court said at page 49 :

''. . . It is true that in the Bender case proof of guilt was entirely circumstantial, whereas in the present case there was direct evidence that defendant issued the check without sufficient funds in or credit with the bank, and circumstantial evidence was relied upon to show his criminal knowledge and intent. However, in the Bender case, it is stated that where circumstantial evidence is substantially relied upon for proof of guilt, adequate instructions on the rules govern-

ing the application of such evidence must be given. (27 Cal.2d at p. 175.) And it has been held that the instruction must be given where criminal knowledge is shown only by circumstantial evidence. (*People* v. *Candiotto,* 128 Cal.App.2d 347, 355-356 [275 P.2d 500].) Cases holding that the instruction need not be given, even upon request, where circumstantial evidence is only incidental or corroborative are not, of course, applicable here. (See *People* v. *Jerman,* 29 Cal.2d 189, 197 [173 P.2d 805] ; *People* v. *Alexander,* 92 Cal.App.2d 230, 235 [206 P.2d 657].)''

And in *People* v. *Candiotto,* 128 Cal.App.2d 347 [275 P.2d 500], cited in *People* v. *Yrigoyen, supra,* the court said at page 357:

''Plaintiff contends that when the evidence is primarily direct and the circumstantial evidence is merely incidental or corroborative, the jury need not be instructed that the evidence must be irreconcilable with the theory of innocence. That is true within the meaning of such statements as made in *People* v. *Jerman,* 29 Cal.2d 189 [173 P.2d 805], and *People* v. *Harmon,* 89 Cal.App.2d 55 [200 P.2d 32]. In the Jerman case, the defendant's own testimony gave evidence of every element of the charge. Hence every element of the charge was covered by direct evidence, none thereof depended upon circumstantial evidence. Obviously, in such a case, the circumstantial evidence was 'incidental' or 'corroborative'; the evidence relied upon was 'primarily' direct; and by definition the rule under discussion did not apply. Similarly, in the Harmon case, the reviewing court, having found that the accused 'admitted the possession of narcotics' (p. 61 of 89 Cal.App.2d, presumably an admission made on the witness stand), concluded that this and other direct evidence relegated the circumstantial evidence to a secondary position; no element of the charge depended primarily or solely upon circumstantial evidence. If proof of a significant element of the charge depends upon circumstantial evidence, the instruction should be given. Thus, in *People* v. *Hatchett, supra,* 63 Cal.App.2d 144 [146 P.2d 469], the defendant, under prosecution for murder, admitted the shooting but claimed it was done in self-defense. The state's evidence bearing upon that issue was almost wholly circumstantial. Failure to give the instruction was cause for reversal of the judgment. In *People* v. *Rayol,* 65 Cal.App.2d 462 [150 P.2d 812], there was direct evidence (testimony of witnesses) of the physical acts committed but the question whether or not the defendant was a

knowing participant rested entirely upon circumstantial evidence. Judgment was reversed for failure to give the instruction. Similarly, in the instant case, proof of defendant's knowledge wholly depended upon circumstantial evidence.

"In the instant case, the failure to include in the instructions given a direct statement of the precise principle under discussion was error."

██ We conclude that under the rule laid down in *People* v. *Yrigoyen, supra,* the court committed reversible error in refusing to instruct the jury that in order to justify a conviction the facts and circumstances must not only be entirely consistent with the theory of guilt but must be irreconcilable with any other rational conclusion. For it is clear that criminal intent and malice aforethought could only be shown by evidence as to facts and circumstances surrounding the homicide in the instant case, and that circumstantial evidence must be relied on to prove the criminal intent or state of mind of appellant. The following statement in *People* v. *Yrigoyen, supra,* at page 50, is quite applicable to the instant case:

"Had the instruction in question been given, the jury might have concluded that the circumstantial evidence, while entirely consistent with defendant's guilt, was also consistent with a rational conclusion that he was innocent."

██ Appellant contends also that the court erred in refusing to instruct the jury that where the evidence is susceptible of two constructions, each of which appears to be reasonable, one pointing to the guilt of the defendant and the other to her innocence, it is the jury's duty to adopt that interpretation which points to her innocence. In *People* v. *Merkouris,* 46 Cal.2d 540, 560-563 [297 P.2d 999], where the evidence was entirely circumstantial, one of the four grounds upon which the court found reversible error was the trial court's failure to give the requested two reasonable theories instruction. In *People* v. *Goldstein, supra,* it was held error, but not prejudicial, to refuse to give requested instructions embodying the principles in CALJIC 26 and 27 where the court held that the evidence of defendant's guilt was clear. In *People* v. *De Voe,* 123 Cal.App. 233 [11 P.2d 26], the court held that the court did not err in refusing such instruction where the circumstantial evidence was merely incidental to and corroborative of the direct.

We believe that the instruction should have been given in the instant case because the proof of appellant's criminal

254

intent was based substantially upon circumstantial evidence, and the evidence was reasonably susceptible of several interpretations: (1) That appellant did not intend to kill her husband; (2) that she acted without malice; and (3) that she acted in self-defense. We are unable to agree with respondent's contention that the court's failure to give it was not prejudicial to appellant.

■ Appellant contends further that the court erred in refusing to give CALJIC instruction Number 28 which states that each essential fact in a chain of circumstances must be proved beyond a reasonable doubt. In *People* v. *Watson,* 46 Cal.2d 818, 830-831 [299 P.2d 243], a case based wholly upon circumstantial evidence, cited by respondent, the Supreme Court held that in a case which rests entirely on circumstantial evidence it was error to refuse an instruction that each fact which is essential to complete a chain of circumstances that will establish defendant's guilt must be proved beyond a reasonable doubt. Such error was not prejudicial where the jury was correctly instructed on the doctrine of reasonable doubt (CALJIC No. 21), the principles embodied in CALJIC Numbers 26 and 27 and other related matters. Respondent quotes in great detail from the Watson case where the Supreme Court reviews various decisions including *People* v. *Mansour,* 103 Cal.App.2d 592 [230 P.2d 52], also cited by respondent. The Supreme Court said, pages 831-832:

"Properly interpreted, CALJIC No. 28 applies the doctrine of reasonable doubt not to proof of miscellaneous collateral or incidental facts, but only to proof of 'each fact which is essential to complete a chain of circumstances that will establish the defendant's guilt.' Although the import of the opening phrase in CALJIC No. 28 may be somewhat confusing because of the reference to its applicability when the People's case rests 'chiefly' on circumstantial evidence, it is clearly applicable to cases such as the present one, which rests entirely upon circumstantial evidence. Accordingly, the trial court erred in refusing to give defendant's instruction which substantially embodied CALJIC No. 28. (See cases collected: Stout on '*Appellate Review of Criminal Convictions on Appeal,*' 43 Cal.L.Rev. 381, 446-447.)

"However, the jury here was correctly instructed on the doctrine of reasonable doubt (CALJIC No. 21; Penal Code, §§ 1906, 1906a), the law applicable where evidence is susceptible of different constructions (CALJIC No. 26), the principle that circumstantial evidence of defendant's guilt

must be inconsistent with any other rational hypothesis (CALJIC No. 27), and other related matters as above noted. Under the circumstances, it does not appear here that the court's failure to give a further instruction substantially in the language of CALJIC No. 28 has 'resulted in a miscarriage of justice' within the meaning of the constitutional provision as hereinafter discussed. (Const., art. VI, § 4½.)''

As we have hereinbefore pointed out, the case against appellant rested substantially upon circumstantial evidence and we believe that an instruction substantially in the form of CALJIC No. 28 should have been given. If CALJIC Numbers 26 and 27 had been given, as they were in *People* v. *Watson, supra,* the error probably would not have been prejudicial, but in the instant case the jury were given no instructions whatever as to the law necessary to a proper consideration of circumstantial evidence nor were the usual instructions given defining direct and indirect evidence.

▪ Appellant next contends that the court committed prejudicial error in omitting several essential instructions upon a rereading of the instructions to the jury. After the jury had retired to deliberate, it returned to the court and requested the rereading of instructions defining the various offenses included in the charge. Thereupon, the court read the instructions previously given defining first degree and second degree murder, premeditation and deliberation, the presumption that one intends the consequences of his voluntary acts and manslaughter. Then the jury made a further request that the court ''read the other side; for the innocence.'' The court then stated it would read all instructions previously given. Instructions given to the jury when it was first charged and omitted on the rereading were CALJIC instructions Numbers 305-A, 305-B, 320 and 309-A. Appellant urges that because the jury were expecting a rereading of all instructions, the court's omission of these four instructions may have conveyed to the jury the impression that the court believed such instructions not applicable to this case. Number 305-A is to the effect that when the jury is in doubt as to whether the crime is murder of the first or second degree they must convict of second degree. However, as pointed out by respondent, the court did reread Number 115-A which states that if the jury entertains a reasonable doubt as to the degree of the crime it must convict the defendant of the lesser offense. Number 305-B is to the effect that the jury must agree unanimously before they can convict, but as pointed out by re-

spondent, the court did reread Number 115-B which is substantially to the same effect. Number 309-A ("due caution and circumspection" is a relative term) is repetitious of CALJIC Number 309 (definition of term "due caution and circumspection"). This omission was no doubt inadvertent as the court did reread a number of instructions relating to self-defense.

The record shows that when the court completed its rereading of the instructions, juror Number 2, who evidently was the foreman of the jury and who had made the request for further instructions, stated: "I think that covers it," and no request for the rereading of the above mentioned instructions was made by appellant's counsel. Under the circumstances we do not believe that it can be held that the failure of the court to reread said instructions was error.

■ Appellant's next contention is that the court's comments on the evidence relating to the defense of self-defense made during the charge to the jury exceeded permissible bounds and invaded the province of the jury. The record shows that after instructing the jury fully and correctly on the law relating to self-defense the court then stated to the jury that the Constitution of the State of California permits the trial judge to comment to the jury on the credibility of any witness and on any other phase of the evidence, and that he proposed to make certain comments concerning the evidence, but that the jurors were to use their own judgment as to the weight and effect of the evidence and draw their own ultimate conclusions. He further stated that the comments he was about to make were offered solely for the purpose of assisting the members of the jury in their deliberations. He then stated:

"One of the necessary elements to justify a killing in self-defense is that it must appear to the defendant as a reasonable person that the infliction of death or great bodily injury is both present and imminent and that the killing must be done under a well founded belief that the killing is necessary to save one's self from death or great bodily harm.

"From the evidence in this case it appears that shortly before the decedent was killed he made an unprovoked assault upon the defendant during which she suffered no serious injury, that she had withdrawn from the scene and that whatever danger to the defendant there might have been in that encounter had subsided. When a few minutes later she reappeared on the scene armed with a rifle, the decedent was

seated, or standing, in the living room talking to the witness Shuster. Was the defendant then in any present or imminent danger either actual or apparent of suffering great bodily injury? Were the circumstances then such as to warrant a well founded belief in the mind of a reasonable person that to save herself from death or great bodily injury that it was necessary to kill?

"After a review of the evidence, it is my conclusion that the answer to each of these questions is no and that the fatal shooting was not discharged in self-defense. If your answers to either of these questions is no, the killing was not justifiable and self-defense is not available to the defendant."

The court again repeated its admonition to the jury that they were to exercise their own judgment upon the evidence and to weigh the testimony of the witnesses. He told them that they were the exclusive judges of the credibility of the witnesses and all of the questions of fact, and the court's comments regarding the evidence were made for the sole purpose of aiding them in arriving at a verdict and could not be used by the jury for the purpose of imposing the court's will of compelling a particular verdict.

Appellant argues that the court in this case exceeded the bounds of propriety and invaded the province of the jury by telling them that the defendant was not in present danger of actual or apparent bodily injury, that a reasonable person would not have believed it necessary to kill to escape death or bodily injury, that the killing was not justifiable, and that self-defense was not available to the defendant.

Respondent in reply contends that there was no element of self-defense established by the evidence and that, therefore, no error could have resulted if the court had completely removed the defense of self-defense from the jury's consideration.

We are unable to agree with respondent that there was no element of self-defense established by the evidence and it is clear that the court considered that self-defense was an issue because immediately prior to making the comment complained of, the court gave full instructions as to self-defense.

Section 19 of article VI of the California Constitution, adopted in 1934, provides that the court "may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case." This section has been considered

by appellate courts in many decisions, the effect of which is well summarized in *People* v. *Huff*, 134 Cal.App.2d 182, at page 187 [285 P.2d 17], as follows:

"While a judge may comment on the evidence, including the credibility of witnesses (Const., art VI, § 19; Pen. Code, § 1127), this privilege has its inherent limitations and must not be of a nature which would invade the province of the jury. (*People* v. *Ottey*, 5 Cal.2d 714 [56 P.2d 193].) Even an expression of opinion concerning the guilt or innocence of a defendant may not be fatal provided the province of the jury is not invaded. (*People* v. *Eudy*, 12 Cal.2d 41 [82 P.2d 359].) However, such comments should be temperately and fairly made and trial courts should be cautious in exercising this power of comment with a view to protecting the rights of the defendant. (*People* v. *Dail*, 22 Cal.2d 642 [140 P.2d 828]; *People* v. *DeMoss*, 4 Cal.2d 469 [50 P.2d 1031].) It has been held that it is improper to commend a witness in the presence of the jury because of the undue weight which would thus be given to the testimony of this witness. (*People* v. *Frank*, 71 Cal.App. 575 [236 P. 189].) A judge should be careful not to throw the weight of his judicial position in a case, either for or against the defendant. (*People* v. *Mahoney*, 201 Cal. 618 [258 P. 607].) The rule is well established that such comments on the evidence 'must be fair, temperate, judicial, dispassionate, and free from apparent contentiousness, partisanship or advocacy.' (*People* v. *Hooper*, 92 Cal.App.2d 524 [207 P.2d 117].) Such comment must be fair and temperate and not argumentative to a degree that makes it characteristically an act of advocacy. (*People* v. *Robinson*, 73 Cal.App.2d 233 [166 P.2d 17]; *People* v. *DeMoss*, 4 Cal.2d 469 [50 P.2d 1031].)"

In the light of these authorities we cannot say that the court went beyond the right to comment given it by the said provision of the Constitution. The court's comment was temperately and fairly made and was not argumentative or contentious to a degree which made it characteristically an act of advocacy. In cases relied upon by appellant the court's statements were argumentative and partisan or intemperate.

Appellant next contends that the trial court erred in rejecting evidence of prior threats and acts of violence by decedent toward appellant, which evidence was offered on the issue of self-defense and to show appellant's state of mind. Appellant argues that the excluded evidence was admissible on the issue of self-defense to show who was the probable

aggressor and to assist the jury to determine, in the light of the prior relations between the parties, whether her husband's lurching or diving gesture toward the defendant would naturally cause a reasonable person in her position to act in self-defense. Appellant argues further that such evidence was admissible for the purpose of showing provocation sufficient to reduce the killing to manslaughter.

Respondent argues that appellant testified that the gun discharged accidentally and that therefore the record presented no issues of self-defense or of provocation sufficient to make the killing manslaughter. However, we are convinced that the evidence in the instant case was such that it presented an issue of self-defense and it is to be noted that the court gave full and complete instructions to the jury on self-defense.

In California in a prosecution for murder where the defense of self-defense is interposed, the defendant may introduce evidence that the reputation of the deceased for peace and quiet was bad and known to him to be bad. (*People* v. *Brophy*, 122 Cal.App.2d 638, 647-648 [265 P.2d 593], and *People* v. *Keys*, 62 Cal.App.2d 903, 912 [145 P.2d 589], citing names.) The general rule is well expressed in 64 American Law Reports, at pages 1029, 1030, as follows:

"The rule is supported by many authorities that on a trial for homicide, or for an assault and battery, the defendant, after laying a proper foundation by evidence tending to show that, in committing the homicide or assault, he acted in self-defense, may introduce evidence of the turbulent and dangerous character of the deceased or party assaulted. While the deliberate, unprovoked killing of a human being cannot in any measure be justified by the fact that he bore the reputation of a turbulent and violent person, the law recognizes the well-established fact in human experience that the known reputation or character of an assailant as to violence and turbulence has a very material bearing on the degree and nature of the apprehension of danger on the part of a person assaulted; also that one who is turbulent and violent may the more readily provoke or assume the aggressive in an encounter. Hence, as bearing on these issues, where a proper foundation has been laid, it is conclusively established in almost all jurisdictions that evidence of the turbulent and dangerous character of the victim of an assault or homicide is admissible."

A defendant may introduce evidence for the trait in question when the immediate circumstances of the killing are

equivocal and raise a doubt in regard to the question whether defendant acted in self-defense. (*People* v. *Lombard,* 17 Cal. 316; *People* v. *Murray,* 10 Cal. 309; *People* v. *Edwards,* 41 Cal. 640; and *People* v. *Lamar,* 148 Cal. 564 [83 P. 993].) In the instant case witness Shuster testified, ''Well, I was just standing there talking to Don, and I just noticed him make a sudden lurch or dive, and I heard a shot, and he dropped.'' It could be said that the immediate circumstances of the killing render it doubtful whether the act was justifiable or not. Therefore, the evidence that decedent had a reputation for violence was admissible on the issue of self-defense.

Testimony that decedent had made prior threats against defendant is admissible if there is evidence tending to show any act of aggression committed by decedent at the time of the homicide indicating that he intended to attack defendant. Assuming that the act of decedent when he made a lurch or dive forward was such as would have aroused in defendant sufficient apprehension to obscure reason and render the average man liable to act rashly and defendant in fact did so act, the testimony of prior threats was admissible. (*People* v. *Gonzales,* 33 Cal.App. 340, 342 [164 P. 1131]; *People* v. *Scoggins,* 37 Cal. 676, 683; and *People* v. *Lombard,* 17 Cal. 316, 320; *People* v. *Logan,* 175 Cal. 45 [164 P. 1121].) See also 2 Wigmore (3d ed.) 44-65, sections 246-248.

We believe that it was error to exclude evidence which tended to show violent and turbulent character and reputation of decedent and that it was also error to exclude testimony of decedent's prior threats against and violent conduct toward appellant. This evidence was relevant to the issue of self-defense and was also extremely relevant as to appellant's state of mind and intent. If such evidence had been admitted the jury might well have either acquitted appellant or have found her guilty only of manslaughter.

In view of the foregoing we are convinced that the court erred in refusing to instruct the jury on circumstantial evidence and also that the court erred in excluding evidence as to the violent and turbulent character of decedent and of his prior threats against and violent conduct toward appellant. We are mindful of the most recent expression of our Supreme Court as to what constitutes reversible error under section 4½ of article VI of our state Constitution, as stated in *People* v. *Watson,* 46 Cal.2d 818 at page 836 [299 P.2d 243], as follows: ''That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the

entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'' With this statement in mind we have made a careful study of the entire record and are of the opinion ''that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.''

The judgment and the order are reversed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied November 2, 1956, and respondent's petition for a hearing by the Supreme Court was denied November 21, 1956. Shenk, J., and Spence, J., were of the opinion that the petition should be granted.